The APPEAL of WILLIAM CHAMBERS, Administrator of MARY ROBB, deceased.

1. Where one, being both obligee in a bond and administrator of the surety therein, is permitted to apply the assets of the surety's estate in payment of the bond, on a promise as administrator to call on the principal to reimburse, which he fails to do until it is too late, he is guilty of gross negligence as administrator, and renders himself personally liable to his *cestuis que trust*.

2. An account, filed before such application of the assets of the surety's estate, cannot be set up as a final account by the administrator, so as to protect himself against the heirs of the surety seeking, more than five years after the final confirmation of such account, to compel him to account for the moneys thus lost by his negligence.  That the administrator was not liable to account for that money when that account was filed, and that he might thereafter become liable, sufficiently disprove the allegation of final settlement.

APPEAL from the decree of the Orphans' Court of Allegheny.

*Sept.* 10.  The facts of this case are fully stated in the subjoined

report of Mr. Darragh, the auditor appointed by the court below, to report the facts, and whether any, and if so, what amount of balance is due or ought to be paid by the appellant.

"The case, as submitted to your auditor, presents the following statement of facts:—

"William Chambers was the administrator of the estate of Mary Robb, deceased. His letters of administration were granted soon after her death, in April 1835.

"At the time of the death of Mary Robb, Chambers held, and was the owner in his own right of, a bond and mortgage executed by said Mary Robb, and a certain Isaac Robb, now deceased, as joint obligors and covenantors in the said bond and mortgage, dated 18th September, 1832, and recorded in Allegheny county.

"On the 20th September, 1837, Chambers filed in the Register's office his account as administrator of Mary Robb's estate, in which account he claims credit for the sum of $642.50, being amount of said bond and mortgage, and interest then due. In that account he charges himself with two items only, but does not charge himself with the amount of said bond or mortgage as executed by Mary and Isaac Robb, nor any part of the same.

"This account was presented to the Orphans' Court at October Term, 1837, and referred to auditors, who re-stated the account, but allowed the credit of $642.50, as in first account, and did not charge Chambers, as administrator, with the bond and mortgage of Mary Robb and Isaac Robb, or any part of the same. That report was confirmed absolutely, 3d Feb. 1840.

"This credit in the administration account of Chambers, allowed by the auditors, was a payment in full to him of the bond and mortgage executed by Mary Robb and Isaac Robb, with the interest, and is so stated on the account.

"The proceeding, now before the auditor, is based on the petition filed March 27, 1847, by Jane Robb, widow and devisee of Oliver Robb, who was one of the heirs of Mary Robb, deceased. The allegation on the part of petitioner is, that Isaac Robb was the actual debtor or principal in the bond and mortgage aforesaid; that he received the money for which the bond and mortgage were given; that Mary Robb, although a co-obligor, was in fact but security for Isaac Robb; that Chambers, the administrator, well knew all these facts; and that he, having received payment from funds of the estate of Mary Robb, was legally required and bound, as administrator of said Mary Robb, to collect said amount from Isaac Robb, or his estate.

" To this petition Chambers, the administrator, filed his answer 27th March, 1847, and therein replies 'that the account as filed was confirmed by the court on 3d March, 1840, and that the proceeds of the estate in his hands were paid to the heirs and creditors as directed by the auditors appointed for the purpose of distribution, which report was confirmed 22d May, 1841, and is on file in Orphans' Court.'

" He further replies that he made a full and faithful administration of the estate, of all and every matter and thing that came to his hands, or of which he had any knowledge, and that 'the Isaac Robb, mentioned in the petition of Jane Robb, died intestate in Westmoreland county, Pa., before said account was filed, leaving no estate behind him for the payment of his debts, excepting some household furniture, which was held for the payment of rent due by him at the time of his death. This respondent proceeded to Robbstown for the purpose of enforcing payment of said alleged $642.50, but could find no estate, real or personal, out of which to make it or any part of it. He made strict inquiry and searches in relation to any estate left by him, but could find none ; that he believes said Isaac Robb died insolvent, and leaving nothing behind him to pay said claim; that nothing whatever has come to his hands, belonging to the estate of said Mary Robb, since he filed his last account, and does not know of anything outstanding.'

" To rebut and answer the foregoing reply of Chambers to the petition of Jane Robb, the petitioner has exhibited to your auditor (and he marks the same as part of the report) a certified copy of the account of J. C. Plummer, and James Bell, administrators of estate of Isaac Robb, deceased, examined and passed by the Orphans' Court of Westmoreland county, 23d May, 1836, showing that the personal estate of Isaac Robb was appraised at the sum of $578.04, which amount, after paying debts due by Isaac Robb, left a balance in their hands of $78.04½, which was paid by them to the guardians of the estate of the infant daughter of said Isaac Robb. Petitioner also exhibits a certified copy of the account of David Bennet, guardian of the infant daughter of said Isaac Robb, showing that he received from said administrators of Isaac Robb $78.04½, and that, in addition thereto, he received the sum of $518.27, making in all the sum of $596.30½ ; this amount was principally received from the sale of certain lots in Robbstown, belonging to the estate of Isaac Robb.

" It is therefore certain that Isaac Robb died seised and possessed of both real and personal estate sufficient to pay the amount of the

bond and mortgage, and the interest at the time of his administration of Mary Robb's estate.

"The next question submitted to your auditor is, that in the event of there having been estate of Isaac Robb sufficient to pay the bond and mortgage, was Isaac's estate or himself bound to pay it or any part of it? From the face of the bond and mortgage, Mary Robb and Isaac Robb were jointly and severally bound for the amount; and without any other testimony, your auditor is of opinion that Isaac Robb's estate was liable to pay one-half of said bond, and Mary Robb's estate the other half; but from the answer of Chambers to petition of Jane Robb, it seems that he looked on Isaac Robb as the actual debtor, and if he, as administrator of Mary Robb, knew that Isaac Robb was the actual debtor in the bond and mortgage, he was, in the opinion of the auditor, bound to use all due diligence to recover the same from the estate of Isaac Robb.

"Did William Chambers exercise such diligence as the law requires of an administrator in his superintendence and control of the affairs of a decedent? J. C. Plummer, Esq.; one of the administrators of Isaac Robb, deceased, testifies that, a short time after he and Bell took out letters of administration on the estate of Isaac Robb, William Chambers came over and called on them, as administrators of Isaac Robb, and presented a bond secured by a mortgage, in which Mary Robb was the principal, and Isaac Robb appeared to us to be the security, being the second named in the mortgage. Chambers stated that he wanted to apprise us of this debt; we told him we had no means to pay; that he must look to the land on which he held the mortgage; and, as we considered Mary Robb the principal, we would not pay it if we had the means. Witness also says that he told Chambers that he could not have collected the debt off the estate of Isaac Robb, because it was manifest it was Mary Robb's debt; we were advised on the subject before Chambers came a second time, and would have nothing to do with it.

"Whether the proceedings of Wm. Chambers, as set forth in the deposition of J. C. Plummer, was the requisite due diligence of an administrator, is for the court to determine. In the opinion of your auditor, it was not.

"The important question, however, is—was the debt, or amount of the bond and mortgage, really the debt of Mary Robb, or was it the debt alone of Isaac Robb? and, if the latter, was all this known to Chambers?

"On this subject there is, first, the answer of Chambers to the petition of Jane Robb. The petitioner charges that this debt was

Isaac Robb's alone, and that Chambers knew it.   The answer does not deny the allegation, but relies on a full settlement of his administration accounts, and the insolvency of Isaac Robb.   There is also the deposition of David Wilson.   He swears that he was present at the time Chambers loaned the money on the bond and mortgage.   It was at the house of Mary Robb; she, Mary Robb, received the money, and she and Isaac Robb executed the bond and mortgage.   On his cross-examination, he states, that Mrs. Robb was borrowing the money for her son Isaac Robb, to buy a tavern-stand in Robbstown.   Isaac was present at the time.   Chambers was present.   *Did not hear him say anything when Mary said she was borrowing the money for Isaac.*

"If Mary Robb did borrow the money for Isaac, it does not appear by any testimony whether she intended it as a gift to Isaac, or whether she was in fact the borrower for Isaac's use.   This the court will determine ; and if, in the opinion of the court, the facts show that this was the real debt of Isaac Robb—that his mother borrowed the money for him on his and her security, expecting and understanding that Isaac was to pay it, and that Chambers, the obligee in the bond and the administrator of Mary Robb, knew all this, then it was his duty to use all due diligence in the collection thereof from the estate of Isaac Robb.

"The court will observe that Chambers, the obligee in the bond and mortgage, was also the administrator of Mary Robb ; as such administrator he paid himself out of the funds of the estate of Mary Robb.   The auditors appointed to examine his account as administrator of Mary Robb, allowed him the credit of $642.50, the amount of the bond and mortgage aforesaid, and the interest then due ; as the owner and holder of the bond and mortgage, he was paid from the funds of the estate of Mary Robb ; and, as the administrator of said Mary Robb, if the facts already detailed are sufficient proof of his knowledge of the fact that Isaac Robb was the real debtor, it was his duty to use diligence in order to recover the amount from Isaac's estate.

"It is very certain that the plea of the insolvency of Isaac Robb cannot avail him, because the accounts of the administrator of Isaac, and that of the guardian of his infant daughter, sufficiently show, that at the time of his administration of the estate of Mary Robb, Isaac's estate was ample to pay said amount of bond and mortgage, and interest due thereon.

"From all the papers and proofs before him, the auditor is of opinion, that the debt for which the bond and mortgage was given

was in fact the debt of Isaac Robb, and that Chambers knew this fact; that there was sufficient estate of Isaac Robb to pay the same; and that Chambers, as administrator of Mary Robb, did not use the care and diligence in order to its collection which the law requires.

"Should the court be of opinion, that, under all the circumstances herein detailed, William Chambers negligently managed the estate of Mary Robb, in regard to this bond and mortgage, then he is answerable to account as follows:—

Dr. To amount paid William Chambers, as per his account on bond and mortgage, which he ought to have collected from the estate of Isaac Robb  -  -  -  -  - $642.50

Interest on same from 3d July, 1837  -  -  -  -

Auditor's charge, to be paid by said William Chambers, in case of his liability as above  -  -  -  -  - 25.00

Paid for rule of court  -  -  -  -  -  -  - .75

Paid for publication of notice  -  -  -  -  - 1.50

"The auditor thinks it proper to state, that at the last hearing the counsel for William Chambers objected to the auditor's power to examine the account at all, because said account was confirmed by the court, 3d July, 1840, and that it was therefore too late to disturb it. This is a matter for the court, and not for an auditor appointed to report facts," &c.

William Chambers filed the following exceptions to the confirmation of the auditor's report:—

1. That, as administrator of Mary Robb, he settled the account in full in the Orphans' Court, and that the same was confirmed absolutely, February 3, 1840, and that, having paid out all moneys and assets in his hands agreeably to report of auditors, confirmed absolutely February 3, 1840, he is no further liable to petitioner, or any one else representing Mary Robb, deceased.

2. That the Orphans' Court has no jurisdiction or power to grant or issue the citation of 6th March, 1847, on which this audit was had.

3. No proceedings against the administrator could legally be had after the lapse of time between the confirmation of the auditor's report and final account, and application for the citation audited.

These exceptions coming on to be heard, the court below overruled them, and confirmed the report of the auditor absolutely; whereupon the exceptant appealed, and here assigned for error that

VOL. XI.—56

1. The Orphans' Court erred in overruling the above exceptions, and in decreeing, that Wm. Chambers account with and pay to the heirs and legal representatives of Mary Robb, deceased, the sum of $642.50, with interest.

*Burke* and *Washington*, for the appellant.—Our account of 20th Sept. 1837, was a final account. Where an account does not appear to be partial, it must be taken to be final: Bower's Appeal, 2 Barr, 432. The very item now in dispute, was before the auditors on that account. Nothing has come to hand or been discovered since. More than five years having elapsed since its final confirmation, we are not liable to account in this or any other way: Weiting *v.* Nessley, 6 Barr, 141. The act of 13th October, 1840, is one of limitation. This is a bill of review, if it is anything; for, to get at the object in view by any other means, by some supposed general powers of the Orphans' Court, would be to put the court above the laws.

*Mellon*, contrà.

The opinion of this court was delivered by

BELL, J.—It is conceded that Mary Robb was the surety of her son Isaac, in the bond executed by them jointly to Chambers, the appellant, and it is proved that the estate of Isaac was fully sufficient to discharge this debt, had it been pursued in time. It was not so pursued by Chambers, either as obligee, or as administrator of the estate of Mary Robb, which became the creditor of the estate of Isaac Robb, immediately upon the application of the assets belonging to the former estate, in satisfaction of the obligation. When this appropriation was made by Chambers, as administrator, it was permitted without resistance, under the understanding that, in his character as administrator, he had promised to call upon the representatives of the principal estate to reimburse that of the surety. His neglect to discharge the duty until it is now too late, certainly places him in the predicament of a trustee guilty of gross negligence in the execution of his office, and therefore liable to answer personally to his *cestui que trust*. This, as a general proposition, does not seem to be denied by the appellant, but he avers he is not bound now to account, inasmuch as he settled a final account of his administration of his intestate's estate, which was regularly confirmed in the year 1841, by which he is protected from further answer.

It is certainly true, that after the settlement and confir-

mation of an executor's or administrator's final account, unappealed from, and after the lapse of time allowed by the act of 1840 for a petition of review, the parties in interest cannot claim again to call the trustee to account, upon the bare suggestion of omitted items, which ought to have entered into the account already settled, or which were then open to the inquiry of the parties, and ripe for the decree of the proper tribunal: Bower's Appeal, 2 Barr, 432; Weiting *v.* Nessley, 6 Barr, 141. But how can this be asserted of the present case? No administration, which does not dispose of the whole estate, can be said to be concluded, and no account, which does not embrace all the items of which the estate is composed, can properly be denominated a final account. That the account filed in 1837 was not of this character, is obvious from the consideration, that the item now in dispute could not have been made a part of it, until the appropriation of the assets belonging to Mary Robb's estate, in payment of the bond held by Chambers; no debt was due from Isaac Robb's estate, for which Chambers could be called on to account. This was necessarily left for future adjustment by a supplemental account. That the administrator was not liable to account for this sum when his first account was filed, and that he might thereafter become so liable, sufficiently disproves the allegation of a final settlement. Had the appellant afterwards actually recovered the money here in dispute from Isaac's estate, will any one doubt, that he might be called on to account for it to the Orphans' Court, by the process adopted in this instance? And what difference does it make in principle, so far as his accountability is concerned, that he has become liable through negligence, and not by receipt? None whatever. When the first account was confirmed, and perhaps for years afterwards, no ground existed upon which he could rightly have been charged with the amount of the bond. His liability results altogether from what has since occurred. It is consequently the subject of a second account, and it follows that the first settlement affords him no protection. Nor does the time, which has elapsed since 1841, when the first account was finally confirmed, furnish an answer to the prayer of the petitioner. In August of the same year, the administrator had formal notice by means of a rule granted by the Orphans' Court, that the parties interested in the estate he represented, looked to him for the discharge of his duty, in collecting the amount due from Isaac's estate: a duty which he fully recognised by his prior and subsequent conduct. That nearly six years after this were allowed to him, within which to discharge his duty, cannot surely be legiti-

mately objected by him as a reason why he should not perform his duty, or answer for his neglect.

Upon the whole case, we see no reason why the appellant should not be now charged with the sum lost to his intestate's estate, through his unwarrantable apathy and indifference.    His answer to the case, made by the next of kin, is a technical one, and too narrow to shield him from their pursuit.

Decree of the Orphans' Court affirmed.