## Groff's Appeal, in Eby's Estate.

*Construction of will.—Effect of devise of land subject to charge in favour of creditors, where debts are paid out of personal estate.— Confirmation of account, effect of as a bar to subsequent citation to account.*

1. A devise of lands by a testator, subject to charges thereon, which were paid by the executor out of the personalty, passes the lands to the devisees freed and discharged therefrom.

2. An account filed by the executor and confirmed in 1851, was *held* to bar proceedings by petition for a citation to compel him to file a supplementary account of moneys, which, if chargeable, were so before and at the time of the filing of the first account.

APPEAL from the Orphans' Court of *Lancaster county.*

This was an appeal by Mary K. Groff, Daniel M. Thomas, Isaac Rutter, and Joseph Rutter, from the decree of the Orphans' Court, on the distribution of the balance in the hands of Christian Eby, executor of Isaac Eby.

The case was this :—Isaac Eby, by his will dated November 26th 1847, proved 5th April 1850, appointed two executors, Christian Eby and William P. Caldwell, and the latter having renounced, letters testamentary were granted to the former. By this will a large and valuable farm was devised to Christian Eby, and he was directed to pay in for testator's creditors, one year after testator's decease, $1000. Another plantation was devised to Isaac Eby, and he was ordered to pay $600 to the executor for the use of the creditors of said deceased, also year after death of

testator. The testator died March 18th 1850. On the 24th March 1851, the executor filed an account charging himself with $4600.31, and asking credits for $4575.03½, including claims of accountant on bond for $1149, boarding, &c., $825, and commissions $221, in all $2195, leaving a balance of $25.27½ in favour of the estate. At the time of filing this account, one of the appellants, Mrs. Groff, was a minor, and was represented by her guardian, the said Christian Eby.

On the 12th October 1857, a petition for a citation, at instance of the present appellants, was presented, requiring said Christian Eby to file a supplementary account for moneys not accounted for previously, and particularly the $1600 before mentioned, with interest; and on the 22d of June 1858, a citation was awarded. He complied with this order by exhibiting a statement of the $25 balance of the first account, and $6.50 credited against it November 9th 1858. Exceptions were filed to this return, and April 12th 1859, he was again directed to exhibit an account, the court, in their opinion, saying:—

"This court has already decided that the executor or administrator *de bonis non* was bound to account; of course it was intended that he was bound to bring said sums which by the will were directed in one year from the testator's decease, to be paid to the executor into the account of his administration."

From this decree an appeal was taken to the Supreme Court to May Term 1859, but was quashed for irregularity. Subsequently such proceedings were had in the Orphans' Court of Lancaster county, that June 11th 1860, the clerk was ordered to reform the account which Christian Eby had filed on the 9th November 1858, and by paper filed of record June 23d 1860, the balance in favour of estate of Isaac Eby, deceased, was ascertained to be $2379.08.

On the day last mentioned, a rule on said executor was granted to show cause why he should not pay these appellants their respective shares of the said sum of $2379.08, due according to his account reformed as aforesaid.

The opinion of the court below (HAYS, J.) was as follows:—

"The counsel on both sides appeared to think that the court were compromitted by decreeing on the last citation against the defendant, that he should bring the sums charged on the land devised to him, and the land devised to his brother Isaac, and to be paid within one year after testator's decease, into the account of his administration. But the question to whom these sums belonged, was expressly and purposely left open by this court; and so the Supreme Court understood the proceeding, and therefore remanded the case. Had the argument been as fully presented at that time as it was on the hearing of this rule, the court might then have decided that question; but looking at the specific directions of the will and the first account—the will re-

[Groff's Appeal, in Eby's Estate.]

quiring that the sums charged upon the plantations given to Isaac Eby and Christian Eby respectively, should be paid to his executors *in one year after testator's decease*, and the court seeing that these sums had not been brought into Christian Eby's first account—they thought it proper that they should be brought into the supplementary account in order to complete the execution of the will with which, as executor, he was charged. When that should be done, the question, as the court said, might be raised, ' To whom do those sums belong ?'

" That is the question now; and it depends upon the will of Isaac Eby, deceased. If it was the intention of the testator that Christian Eby and Isaac Eby, his sons, should *absolutely* pay the sums charged upon the plantations devised to them, then those sums which constitute the balance of the administration account, as reformed, will be distributable among the legatees of the testator in equal shares. The intention is to be collected from the whole will, if he entertained it at all.

" On the part of the accountant, it is contended that the primary intention of the testator was to provide for the payment of his debts, and that this design is to be regarded as the guiding light in the interpretation of his will. If the order in which the clauses stand were material in fixing the meaning, the item for the payment of debts might be deemed of primary consequence, as standing *first* among its provisions, but we cannot perceive that such was his chief solicitude. Why should it have been, when his estate was so large, and his debts were comparatively inconsiderable? The ruling idea in framing his last will and testament, was probably to give to each child and grandchild, just as much of his estate as he thought each ought to have. He had three plantations, and other real estate consisting of several tracts of land and a mill, besides some personal property. These plantations he devises in fee; one to his grandson Jacob Eby, another to his son Christian Eby, and the third to his son Isaac Eby. Each of these devisees is charged with considerable sums, to be paid by him. He gives to his grandson Jacob the plantation in Leacock township, containing one hundred and sixty-nine acres, he paying to the widow, his mother, $25 annually, besides granting her certain privileges and advantages set forth. He was also to pay $800 to his brother, $500 to each of his two sisters, and the further sum of $200 to his brother Isaac Eby's children. So he bequeaths to John Eby all his land in Earl township, adjoining lands, &c., by his paying out the following sums of money, viz., to Isaac and Joseph Rutter each $100. The provisions in relation to Isaac and Christian, his sons, are as follows, viz. :—

" ' Item. I give and devise unto my son Isaac all that certain plantation, with the appurtenances thereto belonging, situate in

West Caln township, Chester county, on which the said Isaac now resides, to him, his heirs and assigns for ever, he the said Isaac paying the sum of six hundred dollars to my executors, for the use of my creditors, in one year after my decease.'

" 'Item. I give and devise to my son Christian Eby, the plantation with the appurtenances thereunto belonging (on which I now reside), containing about one hundred and sixty-two acres, to him, his heirs and assigns for ever. The said Christian to pay one thousand dollars, in one year after my decease, for the use of my creditors.'

" The succeeding paragraph is as follows, viz. : 'I give and bequeath to Mary Bucher twenty-five dollars, to be paid to her one year after my decease by my executors, and as touching all the rest and residue of my real estate, consisting of a grist-mill and saw-mill, and tract of woodland, I do order and direct that my executors hereinafter named, shall in one or two years after my decease, sell and dispose of, either at private or public sale, for such price or prices as may be reasonably gotten for the same.' The executors are next empowered to execute and acknowledge the necessary conveyances to the purchasers : 'And the moneys arising from such sale or sales to be applied to the payment of my just debts and legacies hereinbefore mentioned. And provided the sums of money arising from the sales aforesaid, will not amount to the payment of my debts as aforesaid, then it is my will that the balance shall be paid by my legatees aforesaid (Christiana excepted), in equal proportion to their several gifts and devises; and if it should so happen that the sales should amount to more than pay the debts aforesaid, then the balance shall be equally divided amongst all my legatees aforesaid.' Afterwards the will proceeds : 'and as touching my personal estate, it is my will that it be sold, and I order my executor to sell it in one year after my decease, and the amount applied to the payment of my debts aforesaid.' 'And whereas, Susanna Hart holds a legacy in the premises, devised to my grandson Jacob, to the amount of one hundred and sixty pounds, during her life, it is my will, and I order that all my legatees (Christiana only excepted) pay an equal proportion according to their several bequests ro shares, of the interest annually of the said legacy, and likewise the principal in the same proportion, at her death, or as soon as the same may be paid.'

" The mill and woodland directed to be sold 'in one or two years after' the testator's decease were sold, it is said, whilst he was living, and the proceeds, or a part of them, were included in the inventory of his personal estate. The testator lived two years after the date of this will. Among the debts paid by Christian Eby, as executor, out of the sums that came into his hands, and were accounted for by him, are to Jacob Eby, the

[Groff's Appeal, in Eby's Estate.]

amount of debt and interest on a bond due to him from the estate of the deceased, $2100, and to Christian Eby, the amount of debt and interest on a bond due to him by Isaac Eby, deceased, $1149; also boarding, washing, mending, and attendance on and for deceased, for six years prior to his death, at $137.50 per year, $825. The amount of debts which the executor paid to himself, as due him from the testator, is $1974, besides $2100 paid to Jacob Eby.

" Whether it was the chief solicitude of the testator that his debts should be paid or not, he has carefully provided by his will for their discharge, as we have seen. Besides these sums charged on Christian Eby and Isaac Eby's plantations, for the use of his creditors, and the personal property which he directs to be sold and the amount to be applied to the payment of his debts, he orders and directs the rest of his real estates to be sold, and the moneys arising from such sale or sales to be applied to the payment of his just debts and legacies thereinbefore mentioned. That portion of his real estate, thus set apart as a fund for the special purpose mentioned, was sold by him in his lifetime, before his last will and testament took effect, and the proceeds of course were converted into personal estate, and were personalty at the time of his decease. As such they were applicable not only by his directions, but by force of law, to the payment of his debts; they were personal assets in the hands of his executors, so that when Christian Eby received his letters testamentary, and was charged with the execution of this will, he was entitled to receive, and did receive, $4600.13 of personal assets, applicable to the payment of the debts of his testator. These were more than sufficient to pay all those debts, and were applied to their discharge, leaving a balance in his hands of $25.

" The sums charged on Isaac Eby's and Christian Eby's lands, devised to them, were directed to be paid expressly "for the use of creditors." But after the application of the personal assets, by the executor, in conformity to the directions of the will, to the payment of the testator's debts, there were no creditors, no one to be paid—no use to which the sums thus charged could be applied. Christian Eby, as executor, could not demand from Isaac Eby the six hundred dollars charged on his plantation for the use of the testator's creditors, when there were no such creditors—and for the same reason he was not. obliged to raise the sum charged on his own plantation. Even if he had not so applied the personal assets in his hands, and had called on Isaac Eby to pay the six hundred dollars charged on the plantation devised to him,—the creditors still unpaid, could he legally and equitably have demanded and enforced payment of that sum? The rule seems to be established that the personal estate is first liable to be applied to the payment of debts, not only in intes-

tate estates, but even in estates devised for that purpose, where the devisor or testator leaves personal property, unless the latter is specially or clearly excepted. 'Does there appear (said Lord Eldon) from the whole testamentary disposition taken together an intention on the part of the testator so expressed as to convince a judicial mind that it was meant not merely to charge the real estate, *but so to charge it as to exempt the personal?*' &c. In the case of Walker's Estate, 3 Rawle 229, Judge Rogers said, ' The personal fund is the first in order for the payment of debts, whether mentioned in the will or not, and this is not doubted as between the devisee of the real estate and the legatee, and how it can make any difference as regards the heirs of the descended lands I am at a loss to discover.' P. 241. What Christian Eby could not require to be paid by Isaac Eby on account of the charge on the land devised to him, for the use in the said devise mentioned, he would not be obliged himself to pay on account of the charge on the plantation devised to himself for the same use.

"The conclusion would then appear to follow, legally, that the personal fund provided by the testator being amply sufficient to satisfy all his debts, and not only being properly by law liable to those debts, but actually applied by the executor to discharge the same, there was nothing for the sums charged to be applied to, and the devises were discharged therefrom—so much so, in effect, as if they had been paid by the devisees and applied to the debts of the testator, as he expressed it, 'for the use of his creditors.'

"To corroborate this conclusion, the fact is to be considered that there are no residuary legatees in this will, and that to hold these sums charged on the plantations devised to Isaac Eby and Christian Eby to be payable by them for distribution among the heirs of the testator, would be to determine without necessity or reason, that the testator died intestate in regard to these sums of six hundred and one thousand dollars. But such a position, in a case in which it clearly appears that the testator intended, and did in truth dispose of his whole estate—making no provision for any contemplated residuum—would be untenable. Nor does it affect this view of the will that he directs, in the case of the application of the proceeds of the sale of his mill and woodland, that any surplus beyond what might be necessary to pay his debts should be equally divided among his legatees; first, because this provision of the will relates specifically to the fund to be raised by the mill and woodland, which the testator directs his executors to sell in one or two years after his decease; and, secondly, because the provision was rendered null and ineffectual by the testator's sale of this property in his lifetime.

"There is also a distinction fully recognised which bears upon

[Groff's Appeal, in Eby's Estate.]

this argument, and supports the conclusion—"a distinction between a devise of an estate in trust to pay debts and other charges, and a devise of an estate charged with, or subject to debts or other charges. In the former case, the devise is construed to be *a mere trust* to pay the debts or other charges, giving no beneficial interest to the devisee, but holding him, after the debts or charges are paid, a mere trustee for the heir as to the residue. In the latter case, the devise is construed to convey the whole beneficial interest to the devisee, subject only to the payment of the debts or other charges. The distinction may seem nice, but it is clearly established as a matter of intention: 2 Story's Eq. Jur. § 1245. Lord Eldon, in King *v.* Denison, 1 Vesey & Beames 272, states and illustrates the distinction thus: 'If I give A. and his heirs all my real estate, charged with my debts, that is a devise to him for a particular purpose, but not for that purpose only. If the devise is upon trust to pay my debts, that is a devise for a particular purpose, and nothing more; and the effect of those two modes admits just this difference. The former is a devise of an estate of inheritance, for the purpose of giving the devisee the beneficial interest, subject to a particular purpose; the latter is a devise for a particular purpose, with no intention to give him any beneficial interest. Where, therefore, the whole legal interest is given for the purpose of satisfying trusts expressed, and those trusts do not in their execution exhaust the whole, so much of the beneficial interest as is not exhausted belongs to the heir. But where the whole interest is given for a particular purpose, with an intention to give to the devisee of the legal estate the beneficial interest, if the *whole* is not *exhausted* by that *particular purpose*, the *surplus goes to the devisee*, as it is intended to be given to him.'

"Considering then that the sums charged on the plantations devised to Isaac Eby and Christian Eby belong to them respectively, as the creditors for whose use they were charged, have been satisfied out of the personal estate of the testator, which was not only appropriated by him for that purpose, but was liable in the first place, we are of opinion that the rule in this case be discharged."

This appeal was then taken, and the following error assigned: —The court erred in discharging the rule to show cause why the respective shares of Mary K. Groff and others in the $2379.08, the balance of Isaac Eby's estate in hands of his executor, should not be paid, the same should have been made absolute, and moneys awarded them.

*N. Ellmaker*, for appellants.

*W. B. Fordney*, for appellees.
9 WR.—25

[Groff's Appeal, in Eby's Estate.]

The opinion of the court was delivered, May 21st 1863, by
THOMPSON, J.—The learned judge of the Orphans' Court successfully vindicated the final action of that court in the matter now before us, in the lucid opinion which we find on the paper-books, and we affirm the decree for the reasons therein given. For myself, I think the account filed and confirmed in 1851 was a bar to proceedings commenced in October 1857, calling for an account of moneys, which, if even chargeable against the executor, were so, before and at the time that account was filed. The application for the citation to compel the executor to file a sup-. plementary account was but a bill of review in disguise, and should be barred by the Act of 13th October 1840, which limits the right to it, on sufficient cause shown, to five years. But as this position had not much prominence in argument, and was not necessary to the decision of the question involved, the case was in consultation put upon the want of merits in the appellants, without a particular reference to this point. It is now noticed to prevent any one from supposing that this decision, being on other grounds, rejects that one.

Decree of the Orphans' Court affirmed, at the costs of appellants.