## Kuhns's Appeal.

Where a guardian has perpetrated a fraud in the settlement of his account, the limitation in the Act of October 13th 1840, begins to run from its discovery by the injured party and not from the confirmation of the guardian's account.

May 8th 1878. Before Agnew, C. J., Mercur, Gordon, Paxson, Woodward and Trunkey, JJ. Sharswood, J., absent.

Appeal from the Orphans' Court of *Lancaster county*: Of May Term 1878, No. 122.

Appeal by Lavinia Kuhns from the decree of the court dismissing her petition to open and review the account of her late guardian John B. Stehman.   The petition, which was presented on January 6th 1877, set forth that the petitioner was the daughter of Isaac R. Kuhns, of Lancaster county, who died intestate in October 1864; that on August 24th 1865, Stehman was appointed her guardian; that Isaac R. Kuhns died seised and possessed of considerable real and personal estate ; that by order of court the real estate was sold, and the administrators having filed their accounts on May 14th 1866, it appeared that there remained in their hands, $19,076.03, of which the share of petitioner was $5813.45, the whole of which was paid over to her guardian; that during the minority of petitioner, said guardian never filed any statement or inventory of the property of petitioner, which he had received, or rendered any account of its management; that petitioner came of age, October 8th 1870, and that on April 10th 1871, said guardian filed his account in which he charged himself with having received from the administrators of Isaac R. Kuhns the sum of $4722.99, which amount, with interest was all with which he charged himself, whereas in fact he had received the amount heretofore stated, viz., $5813.45, making a difference of $1090.46, for which he has never rendered any account; that said account was confirmed *nisi*, June 1871, and that no exceptions were filed thereto.   The petition further set forth that during her minority in 1868, the petitioner removed from Lancaster county, Pennsylvania, to Urbana, Ohio, where she had since resided, which residence was well-known to her guardian ; that she was ignorant of the amount and value of her father's estate, and of her share thereof; that she received no notice and had no knowledge of the filing of said guardianship account or of its confirmation until said confirmation *nisi* had become absolute; that she was then assured by said guardian that the sum with which he had then charged himself was all that he had received for her from said estate, and that relying on his integrity, and on the truth of said assurance, she accepted the same and took no steps to investigate the truth thereof; that she had no reason to suspect the falsehood of said assurance until recently, and within the last

two months when she for the first time discovered the facts as heretofore set forth, and which her guardian fraudulently concealed from her. She, therefore, prayed that the said decree of confirmation might be opened, reviewed and set aside, the account corrected by charging accountant with the additional amount not included in said account, and that a citation might issue, &c. The court granted a rule upon Stehman to show cause why the prayer of the petitioner should not be granted, and he filed an answer, February 13th 1877, which set forth that "He objects to and protest against this whole proceeding, as not sustainable either in law or equity, and denies the power of the court to grant the prayer of the petitioner. That respondent did file a guardianship account of the estate of said Lavinia Kuhns, on April 10th 1871, showing a balance in her favor of $4871.08, which was duly confirmed by said court at June Term 1871. That in said account he charged himself with all the money he received for said Lavinia Kuhns, and she having attained her lawful age early in October previous, a full settlement was made with her on said 10th April 1871, at Lancaster, Pa., in the presence of counsel for the administrators of her father's estate, and who prepared the guardianship account, release and note then taken. That at her request, $4700 of said balance was left stand, said Stehman giving her his note therefor payable in one year with five and a half per cent. interest, and the residue of said balance paid her in cash. That said note, according to her wishes, remained unpaid until the spring of 1874, the interest in the meantime being paid; and at the time last mentioned she was in Lancaster county for some five or six weeks, and several days at the residence of your respondent. That she had every opportunity to examine his account, and the settlement made, and never raised any objection, to the knowledge of respondent, until the presentation of the petition, and by numerous letters to him, all showing the confidence in and entire satisfaction with what the said Stehman had done in her estate. That a release given by her to said Stehman, her guardian, dated April 10th 1871, was recorded in the recorder's office at Lancaster, and the following is an extract therefrom :

"'I have this day had and received from John B. Stehman, my guardian, the sum of four thousand eight hundred and seventy-one dollars and eight cents ($4871.08) in full satisfaction and payment of the full balance of the account filed by him as aforesaid, and of all moneys received by him for my use during said guardianship from any and all sources whatever, and all interest accrued thereon after deducting the payments by him made and credited in said account.'

"That all the allegations contained in said petition, which in any way impute or insinuate that the respondent has neglected to account for the moneys due the petitioner are untrue, &c."

To this answer the petitioner filed a general replication and asked for the appointment of an auditor to ascertain and report the facts.

[Kuhns's Appeal.]

The court, Patterson, A. L. J., discharged the rule and dismissed the petition, in an opinion, inter alia, saying:—

"The decree of confirmation in this case by the Orphans' Court having been made by a court of record, and such as cannot be avoided collaterally, but liable only to be reversed or modified by the Supreme Court on an appeal, if made within the time prescribed, and this review not having been asked for within five years after final settlement and confirmation, is it not final and conclusive? We think it is. We are forced to this conclusion by the provision of the Act of Assembly of the 13th October 1840, and the judicial decisions construing that act, so far as we have been able to discover them. Groff's Appeal, 9 Wright 379; Weiting v. Nissley, 6 Barr 141; Bunting's Appeal, 4 W. & S. 469; and other authorities might be cited. The first section of that act clearly fixes a limitation to petitions of review. That limitation is that it must be done within five years after the final decree, confirming the original or supplementary account of the guardian. Not one of the cases cited on the argument in support of this petition of review questions that, or intimates that its provisions fixing that limitation can be disregarded. And this case not coming within the limitation fixed by the act referred to, cannot consequently come within either the letter or spirit of the proviso act of October 13th 1840. If it did come within the purview of that proviso, and though the balance found due in the account, already filed by the late guardian, "shall have been paid over," this petition of review might probably not be denied. Yet as the confirmation of a guardian account can only be opened on equitable principles, and in view of all the facts made manifest by the pleadings in this case, it is very doubtful whether the court would come to the conclusion that " equity and justice" required the petition of complainant to be entertained. . We think the account filed by respondent April 10th 1871, and confirmed on the 19th day of June 1871, is clearly a bar to these proceedings, commenced January 6th 1877.

" We, therefore, discharge the rule and dismiss the petition."

From this decree this appeal was taken.

*Thomas E. Franklin* and *Geo. Brubaker*, for appellant.—The Act of 1840 does not limit the granting of a rehearing on petition for review to five years, where there are specific allegations of fraud. The decree of the Orphans' Court may be impeached for fraud: Mitchell v. Kintzer, 5 Barr 216; Jackson v. Summerville, 1 Harris 359; Reeside v. Reeside, 6 Phila. R. 514. Statutes are made to prevent, not to protect fraud, and where it is shown courts will set aside judgments and decrees: Fermor's Case, 3 Coke 77; 2 Kent's Com. 655, n. All we contend for is, that this case should be sent back, with directions for the appointment of an auditor to investigate the facts and report the same.

[Kuhns's Appeal.]

*N. Ellmaker* and *D. G. Eshleman*, for appellee.—No error in law is alleged as appearing in the decree, and no new matter has been discovered since, so that if this proceeding had been started within five years, no ground for opening the decree is shown: Russell's Administrator's Appeal, 10 Casey 258. The Act of 1840 is a bar to a review of a decree after a lapse of five years, although specific errors are pointed out: Weiting *v.* Nissley, 6 Barr 141; Bunting's Appeal, 4 W. & S. 469; Kinter's Appeal, 12 P. F. Smith 318. Fraud is not to be presumed and must be proved: Stine *v.* Sherk, 1 W. & S. 202; Bear's Estate, 10 P. F. Smith 430. Under the Act of 1840, if the petition for review does not disclose such a case as equity would relieve, it may be dismissed without reference to an auditor.

Mr. Justice TRUNKEY delivered the opinion of the court May 27th 1878.

The guardian's account was confirmed at June Term 1871. The petition for review was presented on January 6th 1877. The alleged error is, that the accountant did not charge himself with $1090.46, the difference between the sum he had received, as her share of her father's estate, and the sum shown in the account. On the 10th day of April 1871, the balance on the face of the account was paid to the petitioner, whereupon she gave a formal receipt in full satisfaction.

Section 1 of the Act of October 13th 1840, Purd. Dig. 1109, gives a right to rehearing of so much of a guardian's account as is specifically alleged to be error, within five years after the final decree of confirmation. It was not the intent of the proviso in that section, because of payment of the balance, to preclude re-examination when the accountant had failed to charge himself with money for which he was liable to account: Kinter's Appeal, 12 P. F. Smith 318. The mere omission of the accountant to charge himself with money received by him, and for which he was liable, cannot be corrected on petition for review after the lapse of five years: Weiting *v.* Nissley, 6 Barr 141. It follows that unless the petitioner shows matter to take the case out of the limitation of the Act of 1840, she is without remedy. For this purpose she charges actual fraud by the accountant, and that she had no reason to suspect his falsehood and fraudulent concealment of facts until within two months before presenting her petition. The case now comes on petition and answer, and the sole question is, has the petitioner, if the fraud appear, a right to a rehearing? The learned judge was of opinion that the Act of 1840 is conclusive against her. We cannot agree that it is the intendment of that statute to take from the Orphans' Court, a court of equity, the power to relieve against fraud not discovered for five years from the decree. It had such power before the enactment. Though a remedial statute it is set up

here as a limitation. "In equity the Statute of Limitations begins to run from the discovery of the fraud, and not before:" Ferris *v.* Henderson, 2 Jones 49. So at law fraud is an answer to a plea of the Statute of Limitations: Bricker *v.* Lightner, 4 Wright 199. The authorities are numerous to like purport. With stronger emphasis it should be ruled that when an executor, administrator or guardian has perpetrated a fraud in the settlement of his account, the limitation in the Act of 1840 begins to run from its discovery by the injured party.

To grant a rehearing for "such relief as justice and equity may require, by reference to auditors, or otherwise," is not an adjudication that the guardian was guilty of the alleged fraud; but that the inculpatory evidence, and, if need be, the exculpatory, shall be heard and duly considered. No fact, affirmed by one party and denied by the other, will be presumed, at the rehearing, without satisfactory proof of its existence.

The alleged error is specifically charged. Do the facts as set forth, taken as true, show fraud? The petitioner avers that in 1868, when in her minority, she removed to Ohio, where she has since resided, and her guardian knew of her change of residence; that she was ignorant of the amount and value of her father's estate and of the share coming to her; that she was assured by him that the sum with which he had charged himself was all he had received for her from said estate; and that relying on his integrity and on the truth of his said assurance, she accepted the same and took no steps to investigate the truth thereof. She had arrived at age six months before. The answer states material things to consider on the question of fraud, to wit, that the guardian made a full settlement with her on said April 10th 1871, in presence of the respectable counsel of her father's estate, who prepared his account and her release; that she had every opportunity to examine his account, and raised no objection; and numerous letters to him, the last dated May 25th 1874, "all showing the confidence in and entire satisfaction with what the said Stehman had done in her estate."

A guardian is bound to the utmost good faith in transactions with his ward. Settlements made soon after the ward comes of age are watched by the courts with strictest scrutiny; and, if it appear that the influence of the guardian continued at the time of settlement, unless he shows that it was fair, just and conscionable, it will be set aside for constructive fraud. The reason for this rule operates in a case like the present. What would be unworthy of serious attention between strangers, dealing with each other at arms length, would be conclusive of fraud against one seeking an unfair advantage from his undue influence arising in a confidential relation. Here a young woman made a final settlement with her guardian. She had full confidence in him, evidenced by her friendly visits and letters for years after. She had every opportunity to

[Kuhns's Appeal.]

examine his account prepared by the counsel for the administrators of her father's estate, and she made no objection; nor does she now object to what is on its face, for it is fair to look upon. The surroundings were persuasive to her mind that all was right. She was ignorant of the value of her father's estate, and was assured by the guardian that he had charged himself with all he had received from said estate. The counsel wrote the release and she signed it without suspicion. The foulness was not on paper, it was in the assurances and concealments of him who was bound to disclose everything to his ward which she ought to know. If it be true that he had received $1090.46 more than charged in the account, can it be pretended the alleged facts do not disclose a fraud? It is mockery to say she could have ascertained the truth, for her confidence in her guardian long continued. There was not a circumstance to shake it, or move her to inquiry.

> Decree reversed, at costs of appellee, and the record ordered to be remitted to the Orphans' Court for further proceedings.