Stetson's Estate.

Argued May 13, 1931. Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*W. W. Montgomery, Jr.,* with him *Henry M. Brownback,* for appellant.—The right of review is barred by the statute of limitations: Milliken's App., 227 Pa. 502; Nixon's Est., 239 Pa. 270; Priestley's App., 127 Pa. 420; Barr's Est., 43 Pa. Superior Ct. 540; George's App., 12 Pa. 260; Bagg's App., 43 Pa. 512; Jones's App., 99 Pa. 124; Given's Est., 292 Pa. 483; Weiting v. Nissley, 6 Pa. 141; Groff's App., 45 Pa. 379; Johnson's App., 114 Pa. 132; Rice v. Braden, 243 Pa. 141.

The granting of the petition was not a proper exercise of discretion: Jones v. Integrity T. Co., 292 Pa. 149; Moss's App., 83 Pa. 264; Biddle's App., 99 Pa. 278; Eisner's Est., 175 Pa. 143; Veech's Est., 74 Pa. Superior Ct. 373; Sherwood's Est., 206 Pa. 465; Bailey's Est., 291 Pa. 421; Littleton's App., 93 Pa. 177; Kachline's Est., 7 Pa. Superior Ct. 163; Michener's Est., 225 Pa. 66.

*John Hampton Barnes,* of *Barnes, Biddle & Myers,* and *Maurice Bower Saul,* of *Saul, Ewing, Remick & Saul,* for appellee.—The five-year limitation of the Acts of 1840 and 1917, does not bar relief: Emery's Est., 1

Camp. 485; Sloan's Est., 254 Pa. 346; Willing's Est., 288 Pa. 337; Huff's Est., 300 Pa. 64; Audenried's Est., 31 Pa. C. C. 198; Patterson's Est., 77 Pitts. L. J. 193; Linnard's Est., 299 Pa. 32.

The decree granting the review was a proper exercise of discretion: Macpherson's Est., 260 Pa. 492; Fidelity-Phila. Trust Co. v. Simpson, 293 Pa. 577; Kelly's Est., 37 Pa. Superior Ct. 320; Maris's Est., 301 Pa. 20.

OPINION BY MR. JUSTICE SIMPSON, June 27, 1931:

When testator died, the principal of his estate consisted in large part of common and preferred stock of the John B. Stetson Company, which, on the adjudication of the executors' first account, was awarded to the trustees named in his will. On three several occasions thereafter, that company gave to each of its shareholders rights to subscribe to a portion of a new issue of stock. These were sold by the executors and trustees, when and as received, and the moneys thereby respectively realized were accounted for in the next three accounts, which were audited and adjudicated in due course, and were confirmed absolutely on March 31, 1908; April 2, 1910, and June 1, 1912. The last of these adjudications stated that "The surviving widow and the two sons of the testator [who were the only persons having any possible interest in the estate] have united in declaring to the court that they have examined the account and approve, ratify and confirm the same." The sums received from the sale of those rights were awarded by the court, in the several adjudications, to the testamentary trustees, upon the trusts contained in testator's will. In five later accounts (three of which were filed subsequent to 1917, and were audited, adjudicated and confirmed absolutely more than five years prior to the filing of the petition for review now under consideration), the testamentary trustees charged themselves, in each of the principal accounts, with the net balance shown by the adjudication of their immediately preced-

ing account, which, in each case, included all three of the sums received from the sale of those rights; and in the adjudications of these five accounts, the last of which was confirmed absolutely on June 23, 1924, the principal, made up as stated, was again awarded to the testamentary trustees, upon the trusts contained in testator's will.

With the record in this shape, the life tenants,—claiming that those three sums were income and not principal, and hence should have been awarded to them absolutely and not to the testamentary trustees—on April 30, 1930, filed a petition to reopen and review all of those accounts and adjudications. The court below decreed the relief prayed for on the theory that, since those sums were still in the hands of the testamentary trustees, the accounts and adjudications could be opened and reviewed after any lapse of time, no matter how great. Appellants assert that this was an erroneous conclusion, and contend that, under section 1 of the Act of October 13, 1840, P. L. 1841, page 1, and section 48 of the Fiduciaries Act of June 7, 1917, P. L. 447, 514, the right to a review of each of those eight accounts was lost after the expiration of five years from its absolute confirmation. The court below seems to concede that this would have been so but for the fact that we have repeatedly said, after as well as before the passage of those statutes, that the orphans' court has an inherent right to review and correct its errors. We have so said, and now repeat it; but we have never said (where no fraud was alleged, as here there was not) that the limitation of time expressed in those statutes did not apply, if the relief sought was of a matter expressly declared to be within their scope and purpose. To have so decided would have been to convict the legislature of giving to a petitioning litigant the right to decide for himself whether he would proceed under or aside from the statute, telling him that if he took the former course he would limit himself as to the time he might apply for

relief, and if he took the latter he would be free from all such limitations; in other words, the practical effect of so deciding would be to make the statute a piece of useless legislation. Such a conclusion should never be reached, unless no other is reasonably possible, which is not the situation here.

Moreover, section 13 of the Act of March 28, 1806, P. L. 558, 569, 4 Sm. L. 326, 332, is an express prohibition to our so deciding. It is there said: "In all cases where a remedy is provided or duty enjoined, or anything directed to be done by any act or acts of Assembly of this Commonwealth, the directions of the said acts, shall be strictly pursued, and no penalty shall be inflicted or anything done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such act or acts into effect." At one time the two clauses of this section were construed together, and it was applied only to penal actions and indictable offenses: Rees v. Emerick, 6 S. & R. 286, 289. We have long since abandoned that construction, however (Wike v. Lightner, 1 R. 289; Hare v. Commonwealth, 92 Pa. 141; Borough of Beltzhoover v. Gollings, 101 Pa. 293), and it is now held that where a statute provides a remedy its directions must be strictly pursued, and the prior method of procedure to obtain relief, whether at common law or in equity, will be treated as still in force only to the extent necessary for carrying the statute into effect: Heller v. Fishman, 278 Pa. 328, 331. Since, then, the Act of 1840 formerly provided, and now that of 1917 provides a remedy by bills of review in the cases specified in them, each must be strictly followed and the prior procedure can no longer be sustained.

This brings us to the question as to how far, if at all, those statutes are applicable here. The Act of 1840 probably is inapplicable since it relates only to the accounts of an "executor, administrator or guardian," whereas those sought to be reviewed in this proceeding are accounts of testamentary trustees. The commission

which drafted the various statutes to "codify and revise the law of decedents' estates," says in their Report (page 219), that "the word 'fiduciary' is substituted for 'executor, administrator or guardian' [as appearing in the Act of 1840, thus] making the act include testamentary trustees." It is not necessary to consider at this time whether or not there was any exception to this interpretation of the Act of 1840. It was repealed by the Fiduciaries Act of 1917 (at page 539), and for it was substituted section 48 of the latter statute which provides as follows (P. L. 514): "Within five years after the final decree confirming the original or supplementary account of any fiduciary, which has been or may be hereafter passed upon, [a] petition of review being presented . . . by any person interested therein, alleging errors in such account, or in any adjudication of the orphans' court, or any report of an auditor of such account, which errors shall be specifically set forth in said petition of review, said petition and errors being verified by oath or affirmation, the orphans' court shall grant a rehearing of so much of said account, adjudication, or auditor's report as is alleged to be error in said petition of review, and give such relief as equity and justice may require, by reference to auditors, or otherwise, with like right of appeal to the proper appellate court as in other cases: Provided, That this act shall not extend to any cause when the balance found due shall have been actually paid and discharged by any fiduciary."

Under the Act of 1806, supra, this section of the Act of 1917 must be construed to mean that the party "alleging errors in such account, or in any adjudication of the orphans' court, or any report of an auditor on such account," can only effectually do so "within five years after the final decree confirming" the account. Under well-settled principles, this limitation of time would probably be applied to accounts and adjudications previously filed or made, by counting the time from the date of the passage of the statute; but, whether or not this be so, the

statute clearly applies to the three accounts and adjudications, already referred to, which were filed and confirmed after the Act of 1917 was passed, and more than five years before the petition for review was filed. These three being unassailable, all later ones necessarily are, and hence petitioners, by their delay in applying for relief, have lost the opportunity to have the alleged errors of which they complain corrected at this late day.

Appellees erroneously contend, however, that we have repeatedly decided this point differently. A careful study of all the opinions referred to by the respective counsel, and of many others, including, as we believe, every relevant decision of this court since the Act of 1840 was passed, has shown us that no review was ever granted where the record showed a case within the purview of either of those statutes, if its applicability was urged, unless fraud was alleged and proved, which, of course, vitiates these judicial decrees as it does everything else it touches: Kuhns's Appeal, 87 Pa. 100.

It is said in Kinter's Appeal, 62 Pa. 318, 322, that the Act of 1840 "was probably passed in consequence of the decision of this court in Briggs's Appeal, 5 Watts 91," where a review had been allowed although more than five years had passed after the date of the final decree which was reviewed. However that may be, as we have already said, our opinions since 1840 show that we have never authorized or approved a review, if the five years had passed and that fact was urged as a defense: see Weiting v. Nessley, 6 Pa. 141 (1847); Chambers's Appeal, 11 Pa. 436, 442 (1849); George's Appeal, 12 Pa. 260, 262 (1849; Baggs's Appeal, 43 Pa. 512, 514 (1862); Groff's Appeal, 45 Pa. 379, 386 (1863); Kinter's Appeal, supra, (1869); Kuhns's Appeal, supra, (1878); Neill's Appeal, (sub nomine Littleton's Appeal), 93 Pa. 177, 181 (1880); Jones's Appeals, 99 Pa. 124, 129 (1882); Jones's Appeal, 114 Pa. 132, 141 (1886); Sloan's Estate, 254 Pa. 346, 350 (1916); Given's Estate, 292 Pa. 483, 487 (1928).

It is obvious that to quote from all those opinions would unduly lengthen the present one, but it may not be unwise to cite from a few. In the first of them (Weiting v. Nessley, 6 Pa. 141) we "affirmed for the reasons given by the president of the orphans' court." He said: "Whatsoever may have been the practice in relation to opening and correcting such accounts, and the time during which it would be allowed, we regard the question now settled by the Act of 13th October, 1840. By the Act of 29th March, 1832, . . . the orphans' court is declared to be a court of record, with all the qualities and incidents of courts of record at common law, and in all matters within its jurisdiction, its proceedings and decrees shall not be reversed or avoided collaterally in any other court, but they shall be liable to reversal, or modification, or alteration, on appeal to the Supreme Court, if made within three years. And by the Act of 13th October, 1840, relating to orphans' courts, a review may be granted in a proper case made out within five years after the final settlement of account. These acts, taken together, form a perfect system, and any person injured by the settlement of an account must pursue one or the other of those modes for redress, which in most cases are all that can be required. There may be particular cases of hardships in this law, but the general benefit of the provisions of these acts of assembly far overbalance these particular cases. These acts, whilst they give to the vigilant every means of redress necessary for their protection, fix a period when all litigation is at an end. In the present case, the account was confirmed on the 12th February, 1839 . . . and not having been appealed from within three years, nor a review asked for within five years, it is final and conclusive."

In Jones's App., supra, we said (99 Pa. 129) : "The Act of October 13, 1840, not only gives the right of review to a party in interest upon proper showing, but fixes a limitation to petitions for review. It is none the less

a limitation, because it does not begin to run in favor of an accountant who has perpetrated a fraud upon an interested party until discovery of the fraud by such party. . . . Whether the review is demanded for error in law apparent in the decree, or for new matter which has arisen after the decree, or for new proof which has come to light since the decree, the statutory limitation applies."

In the last of those cases (Given's App., 292 Pa. 483) we said at page 487: "Conceding the existence of the implied power of the orphans' court to make changes where error appears, . . . yet the legislation just named [the Acts of 1840 and 1917] in express terms limits the intervention to demands made within five years of the time of confirmation of the account and distribution complained of."

Against this strong current of authority, appellees, despite their earnest argument, have not referred us to a single opinion of ours, wherein we have authorized or approved a review when the five-year limitation was urged as a defense to the petition. It is only necessary, therefore, for us to very briefly refer to the cases cited by them.

In White's Est., 163 Pa. 388, Robins's Est., 180 Pa. 360, Washburn's Est., 187 Pa. 162, and Yung's Est., 199 Pa. 35, the Act of 1840 was the only limiting statute then in force. It was not even referred to, obviously because the errors complained of were not in the accounts sought to be reviewed, which was the only point that statute covered. In Donnelly's Est., 272 Pa. 208, 211, where the review was granted after the lapse of more than five years, the Acts of 1840 and 1917 do not seem to have been referred to, though we cite Sloan's Est., 254 Pa. 346, for the proposition that "the court [below] clearly had authority to make an order of review, no rights having changed in consequence of the decree, and the property remaining intact in the possession of Mrs. Donnelly," the petitioner. Probably

the Acts of 1840 and 1917 were not referred to, or effect given to them, because they had not been pleaded, as statutes of limitation must be, if it is desired that effect shall be given to them. In Linnard's Est., 299 Pa. 32, the Act of 1917 was cited, and the petition for review was dismissed because there was nothing in it entitling petitioner, who was appellant, to review the distribution. In that light must be understood what we said on page 37: "We have no doubt of the inherent power of the court below to allow the petition; the question is, Was the refusal so to do an abuse of discretion?"

It is, of course, to be regretted that the general expressions quoted from Donnelly's Est. and Linnard's Est., supra,—for which the writer hereof must bear his full share of responsibility—were not so qualified in those opinions as to remove all doubt touching the matter, but we cannot permit that oversight of ours to destroy the Acts of 1840 and 1917, nor can we consider those expressions as overruling or qualifying the foregoing long line of cases in which the point here involved was expressly made and clearly decided. We can reach no other conclusion, therefore, than that where, as here, no fraud is charged, the review of alleged errors in an "account, or in any adjudication of the orphans' court, or in any report of an auditor of such account," must be petitioned for "within five years after the final decree confirming" the account, or it will be too late.

The decree of the court below is reversed, and the petition of appellees praying the opening and reviewing of the accounts and adjudications therein referred to, is dismissed at their cost.