## Mervine's Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the adjudication of

SINKLER, J., Auditing Judge.—By decree entered September 22, 1931, a citation was awarded to show cause why the adjudication of Thompson, J., filed November 16, 1921, should not be reviewed. An answer was filed by the Commonwealth of Pennsylvania on October 16, 1931, and by decree entered May 18, 1932, it was ordered and decreed that the adjudication be opened and reviewed.

At the argument before the court in banc upon the petition for review and the answer thereto, Miss Greenberg, representing the Commonwealth, argued at length the question as to whether the petitioner was entitled to a review by reason of the lapse of time, and cited in support of her contention Stetson's Estate, 305 Pa. 62. Miss Greenberg concluded with an agreement that the decree granting the review should be entered, but reserved the right to present before the auditing judge the question as to whether the petitioner was entitled to a review by reason of the case just cited. In the brief of argument filed with me, this contention is not renewed, and I shall therefore consider the other contentions presented to me in behalf of the Commonwealth and the petitioner.

An examination has been made of the original will, which is set forth in the adjudication of Thompson, J. It is holographic, and is not attested by subscribing witnesses. The will is exactly as follows:

"March 23rd 1916

I give and bequeath unto "Mary Pullon all my.
Police Beneficory, Lodges. Societies and Building Asso-
ciation money's and all my personal effects. and the
said "Mary Pullon. to pay all my debts. and Funerel ex-
penses. after my expenses are paid $2.000, is to buy the
said "Mary Pullon a property. to be hers as long as she
lives and that she cannot mortgage or borrow any money on
said property, and after her death the property to go to
the German Hospital.

Signed the 23rd day of March in the
year of our Lord one thousand nine
hundred and sixteen "1916"

Paul Mervine."

In each of the three instances where the name Mary Pullon appears a quota-tion precedes the word "Mary." No light is thrown on the intention of the testator by any punctuation in the will, nor can the auditing judge interpret the marks which appear after certain words as punctuation.

The adjudication of Thompson, J., which I am asked to review, awards to Mary Pullon absolutely the balance of the proceeds from the pension fund, the Mozart Harmonie Yearly and the Northern Liberties Building Association, remaining after the payment of the debts and funeral expenses in the sum of $1,807.43. Certain other assets disclosed by the inventory amount to $841.27. After deducting the transfer inheritance tax, the balance of this sum is awarded to Mary Pullon for life upon the entry by her of security to protect the interests in remainder at her death.

The auditing judge is informed that the award of $1,807.43 made by the adjudication of Thompson, J., was paid by the accountant to Mary Pullon, but that she never entered the security required by the adjudication, and that the balance of the residue of the estate was never paid over to her and remains in the hands of the accountant.

In behalf of the estate of Mary Pullon, it is now contended that the adjudi-cation of Thompson, J., was in error by reason of making the award of the residue to Mary Pullon for life. It is contended that the bequest to her is an absolute one.

In behalf of the Commonwealth, it is argued by the terms of the will that Mary Pullon is given no more than a life estate in the entire estate bequeathed by the testator, but this contention is not pressed for the reason that the estate of Mary Pullon is not sufficient to repay the amount awarded to her absolutely by the adjudication of Thompson, J.

It should be noted that the adjudication of Thompson, J., is dated November 16, 1921; that Mary Pullon received her award of $1,807.43, and on February 26, 1923, ordered the same marked satisfied; that Mary Pullon died on May 27, 1931; that from the time it was awarded to the date of her death Mary Pullon received the income on the sum of $841.27, and that she never at any time raised any question as to the adjudication of Thompson, J. Now, 10 years having elapsed since the date of the adjudication, her administrator asks for a review of the adjudication.

The adjudication of Thompson, J., correctly interprets the will. The inten-

tion of the testator is unmistakable. The $2,000 is to be used for purchasing a property which Mary Pullon is to have the right to occupy as long as she lives. The value of the property is not to be impaired during her lifetime, and this is to be accomplished by the provision that Mary Pullon may not mortgage or borrow money upon the property. Any doubt as to the testator's intention is removed by the further provision that after her death the property is to go to the German Hospital. The bequest in remainder is, as pointed out by Thompson, J., invalid, because the will is not attested by two subscribing witnesses. An intestacy therefore occurs, as to the remainder, which is claimed by the Commonwealth by reason of there being no known heirs of the' testator. Until an account is filed, however, no awards can be made.

*Lyons & Gould*, for exceptant.

*Charles Klein*, Special Deputy Attorney General, contra.

STEARNE, J., November 3, 1933.—Despite acquiesence of over 12 years, petitioner prayed to review an adjudication because of an alleged mistake of law. Stetson's Estate, 305 Pa. 62, would have barred such relief. However, the Commonwealth, claiming an escheat, the only other party in interest, not desiring to take advantage of a statute of limitation, joined in the application, and the adjudication was accordingly opened. An auditing judge filed a readjudication, to which exceptions have been filed. The readjudication confirmed the original adjudication. . . .

According to the inventory and appraisement, the entire personal estate consisted of cash: (*a*) Proceeds from a pension fund, a lodge, and a building and loan association, aggregating, $2,442.03; and (*b*) deposits in banks and accrued wages amounting to $841.27, making a total of $3,483.30. The debts and funeral expenses' amounted to $834.60.

The original auditing judge construed the will as passing to Mary Pullon, as specific bequests, the funds from the pension, lodge, and building association. By necessary implication, "personal effects" were regarded as pertaining to articles of personal use, wear, and adornment, and, as none appeared in the inventory, no awards thereof were made. The auditing judge deducted from such bequests, so regarded by him as specific, the debts and funeral bill (because the will provided that Mary Pullon was to pay them), and awarded the balance to her absolutely. There remained $841.27 in cash as above stated. Because Mary Pullon was also directed to purchase a home to be occupied by her for life, with spendthrift provisions, such balance was awarded to her for life upon the entry of security. The absolute award of $1,807.43 was duly paid and satisfied, but Mary Pullon never entered security for the $841.27 for life, nor did she ever receive the same. Mary Pullon is now deceased, and it is agreed that her estate is insolvent and that any overpayment is uncollectible from her estate. The charitable devise following the life estate is conceded to be void because of the defective execution of the will. The administrator of Mary Pullon now claims to be entitled to the said sum of $841.27 absolutely, as part of her estate. This is upon the theory that the words "and all my personal effects" following the bequest of the pension, lodge, and building association money, constituted a valid and absolute gift of the cash in the bank, etc., free from any conditions, restrictions, or trusts whatsoever.

We are not persuaded that exceptant's contention is sound. It may be conceded for the sake of argument that the words "and all my personal effects," under the present will, do include such cash in bank. But the acceptance of such bequests entail two conditions: (*a*) Payment of debts and funeral expenses; and (*b*) expenditure of $2,000 for a home, for life only, with

remainder to charity. The original auditing judge deducted the first item but made no adequate provision for the second. We are of opinion that what should have been done was to deduct from the total cash, $3,483.30, the two items of funeral bill and debts, $834.60, and the fund for the home, $2,000, a total of $2,834.60, and award the balance of $648.70 to Mary Pullon absolutely. In the opinion of the court, Mary Pullon has been overpaid the difference between her award of $1,807.43 and the amount which she should have received as above, to wit, $648.70, an overpayment of $1,158.73.

So far as the $2,000 provision with respect to the purchase of the house is concerned, the will cuts down an absolute estate to a life estate in that amount in language as clear and explicit as the gift itself. It is very clear that Mary Pullon cannot take the whole estate and ignore the subsequent testamentary directions and limitations: Reiff v. Pepo, 290 Pa. 508; Semple's Estate, 6 D. & C. 200; Sheets' Estate, 52 Pa. 257; Schuldt v. Reading Trust Co. et al., 270 Pa. 360.

Therefore, whether under the auditing judge's construction or under the construction which we now adopt, exceptant is not entitled to the fund which he now claims.

Had there been a residuary clause and a void gift carved thereout, the gift which failed would pass according to such residuary clause: Gregg v. Keenan, 9 Dist. R. 262; 2 Jarman on Wills (7th ed.), 1007. The charitable gift having failed, we have considered whether this void devise passes to the heirs of the decedent or to Mary Pullon, beneficially entitled to all the other part of the estate. After due consideration, we have determined that a devise of the whole of an estate is not a residuary devise. To constitute a residuary devise, there must be an adequate designation of what has not otherwise been disposed of: 1 Page on Wills (2d ed.), section 867; 40 Cyc. 1563; Wood's Estate, 209 Pa. 16. As there is no residuary legatee, the void devise passes to the heirs and next of kin in accordance with section 6 of the Wills Act of 1917. There being no next of kin, the estate passes to the Commonwealth by escheat.

The exceptions are dismissed and the readjudication, modified as above, is confirmed absolutely.