# Louise Jones's Appeals.

1. Distribution accounts should not be blended with administration accounts. An administration account properly settled shows nothing more than the balance due legatees or distributees under the intestate laws, after payment of the debts and expenses of settling the estate.

2. The Act of October 13th 1840, Pamph. L. (1841) 1, fixing five years as the limitation of time within which a bill of review will be granted, applies equally whether the review be demanded for error in law apparent in the decree, or for new matter which has arisen since the decree, or for new proof that has come to light since the decree.

3. It is the duty of an administrator in distributing the estate of his decedent under the intestate laws to take from the distributees refunding bonds, and if he fails to do so he will be adjudged guilty of a devastavit and held personally liable to a creditor of the decedent for the whole amount thus paid out.

4. The fact that such creditor omitted to appear and except to the distribution upon the settlement of the administrator's account is not such laches as will exempt the administrator from such liability.

5. Where an administrator's account is filed combined with a distribution account, the decree of the court confirming the same will not be held to authorize distribution by the administrator without taking refunding bonds in the manner provided by law.

6. Whether in such case the confirmation of the account is an adjudication of the distribution, not decided.

7. An order of the Orphans' Court to the effect that a decree confirming an account shall be opened and set aside and a rehearing had, is not a final decree from which an appeal can be taken.

November 4th 1881. Before Sharswood, C. J., Mercur, Gordon, Trunkey, Sterrett, and Green, JJ. Paxson, J., absent.

Appeals from the Orphans' Court of *Allegheny county:* Of October and November Term 1881, Nos. 164 and 255.

These were appeals of Louise Jones, administratrix of the estate of Samuel Jones, deceased, from two decrees of the Orphans' Court of Allegheny county, one opening and setting aside the appellant's account as administratrix, the other surcharging her with the sum of $22,567.70.

The facts of the case were as follows:—On October 30th 1852, Samuel Jones became surety upon an official bond filed by H. B. Wilkins and H. Hepburn as guardians of the estate of Mary C. Livingstone and Eugene Livingstone in the sum of $20,000. On September 24th 1862 said Jones died intestate leaving a widow Louise and five minor children, viz., Beverly, Stella, Howard, Carrie and Jesse. Letters of administration upon the estate of said Jones were duly granted to his widow. On De-

cember 5th 1870 Mrs. Jones filed her final account as administratrix, which was confirmed nisi, and on December 16th 1870 confirmed absolutely.

That account showed some $56,550 of personal property in the hands of the accountant, out of which she had paid debts and liabilities of the estate some $33,982.30, and showed a distribution of the remaining $22,567.70 among the widow and children according to the provisions of the intestate law. The shares of two of the children, Beverly and Stella, who had come of age between the death of their father and the filing of the account, had been paid in full to them, and the shares of the other children had been paid to their guardian. Mrs. Jones took no refunding bonds for the amounts thus distributed.

Eugene Livingstone had died intestate in 1862, leaving to survive him his sister the said Mary C. Livingstone and his father Eugene Livingstone. His said father released all his interest in his son's estate unto the said Mary, whereby the said Mary became solely entitled to said estate. Said Mary afterwards intermarried with Maturin L. Delafield.

On April 28th 1876 H. B. Wilkins, as surviving guardian of the said Mary C. Delafield, filed his final account. Exceptions were filed to said account, and by decree of the Orphans' Court entered September 7th 1878 said Wilkins was found to have in his hands the sum of $115,905.87 belonging to his ward, which he was ordered and directed to pay over to her. Said Wilkins failing to pay said sum, and being insolvent, suit was instituted upon his official bond whereon Jones was surety. This was the first notice or knowledge that Mrs. Jones had of the existence of such bond.

This action was so proceeded in, that a final judgment for the amount of the penalty of said bond, $20,000, was on November 1st 1879, obtained against Mrs. Jones, as administratrix of the estate of S. Jones, deceased.

Subsequently, on March 20th 1880, in the Orphans' Court, Delafield and wife filed their petition, setting forth the recovery of the foregoing judgment, that Mrs. Jones as administratrix declined to pay the same, and asking a citation against her and the heirs of S. Jones. Their prayers for relief were: (1st) That Mrs. Jones as administratrix should be ordered to pay the amount of said judgment. (2d) Or that Mrs. Jones, Beverly Jones, Stella Jones, Howard Jones, Carrie Jones, and Jesse Jones be ordered to refund and pay to the administratrix $20,000 with interest, and that the administratrix be ordered thereupon to file an account in the Orphans' Court for the purpose of having the amount so paid to her distributed to the parties entitled thereto, and that said widow and heirs be restrained and enjoined from parting with or incumbering any

real estate that had descended to them from S. Jones, their father.

To this petition and citation Mrs. Jones answered that she had not in her hands, as administratrix, any moneys or personal property of the estate of S. Jones, deceased, that she had filed her final account of said estate nine years before, which account and distribution shown thereby, had been duly confirmed by the court, on December 16th 1870; that the moneys and personal property, in accordance with said account, had been long since paid over to and distributed among the widow and heirs of said Jones. She also set up in her answer the laches and long delay of the petitioners in making known their claim; that Mrs. Delafield had been of full age several years before said final account and distribution of the Jones estate had been made, and had neither excepted thereto, nor given any notice of the existence of said bond, or of any supposed liability thereunder. The heirs filed answers containing similar averments.

After the filing of these answers the petitioners obtained leave of court to amend their petition by praying that Mrs. Jones's account as administratrix be opened and set aside, and that the account be reaudited and that petitioners be permitted to prove their claims.

Upon the hearing, the Orphans' Court decreed that the decree of confirmation of the account of Mrs. Jones, administratrix of S. Jones, deceased, as to the moneys and property divided among the widow and children, should be opened and set aside, and that the clerk should have due advertisement made according to law, of said account, and that the same should be reaudited.

From this decree Mrs. Jones took the first of the present appeals, assigning the decree for error.

On August 24th 1881 Delafield and wife filed exceptions in the Orphans' Court to the account of Mrs. Jones, administratrix, which continued to stand just as when filed and approved in 1870. Under these exceptions testimony was adduced by both parties, showing the same state of facts substantially as above set forth, and on August 25th 1881 the court, in an opinion by HAWKINS, P. J., entered a decree surcharging Mrs. Jones, administratrix of S. Jones, deceased, with the sum of $22,567.70, and awarding the sum of $22,000 to the said judgment of Delafield and wife.

Mrs. Jones thereupon took the second of the present appeals, assigning for error the decree of the court.

*George Shiras, Jr.*, for the appellant.—An administrator's distribution account confirmed by a decree of the Orphans' Court can only be disturbed by a bill of review within five

years: Hendrickson's Estate, 2 Pitts. Rep. 360 ; Commonwealth v. Severn, 3 W. N. C. 303 ; Kline's Appeal, 5 Norris 367; Charlton's Appeal, 7 Norris 476.

In the present case, the decree of the Orphans' Court, confirming the account filed by the administratrix of S. Jones, deceased, which account exhibited a distribution of the personal property of the decedent, among his widow and children, was a final decree of distribution within the scope and meaning of the authorities. The fact that the decree was confirmatory of a distribution already made does not deprive it of its character as a definitive and final decree. Ratification by a court of an act which the court would, on application, have approved or directed, is of the same legal efficacy as if it had preceded the act.

Assuming, then, that this was a decree that protected Mrs. Jones, and that the appellees could not have been heard to impeach the decree except by a bill of review, there were four reasons why the court below erred in entertaining the bill of review.

1st. More than five years had elapsed from the decree of confirmation of Mrs. Jones's account; and hence the court had no power to open it. Hendrickson's Appeal, supra.

2d. It distinctly appears, that the balance, with which it is now sought to surcharge Mrs. Jones, had been actually paid and discharged by her years before the filing of the petition or bill of review. Russell's Appeal, 10 Casey, 258; Cramp's Appeal, 2 W. N. C. 391; Stewart's Appeal, 5 Norris 149.

3d. Even if the application had been made in time, and even if it appeared that the original decree had not been executed by the payment of the balance before the bill of review was filed, yet the court should have refused the application to open the decree, because made too late and not for equitable reasons.

(a.) The petition does not disclose that there is any error apparent on the face of the decree. It is true that the combination of an administrator's account and a distribution account has been censured by the Supreme Court, but until very lately it has been the universal practice to make such combinations where the estates are solvent. It is, at any rate, merely bad practice, and not such an error in law as affords ground for a bill of review.

(b.) The allegation of after-discovered evidence or facts is not sustained. To say that the discovery of the dereliction of Wilkins is an after-discovered fact is a begging of the question. What is meant by after-discovery of a material fact is discovery, after entry of the decree, of a pre-existing fact, which, if known to the court, would have affected the decree. But nobody ever

heard it suggested that the subsequent taking place of a fact would authorize a court to set aside a previous final decree—particularly when such previous decree had been executed by the payment of moneys to those thereby declared to be entitled to them.

(*c.*) But, at all events, the court will not disturb a decree of such long standing unless constrained to do so by strong equities. And in the present case, the equities are with the widow and children of the decedent. He was merely a surety. The default of his principal did not take place during his life, nor till years afterward.

The distribution and decree relied upon were not made till years after the death of the surety, and when the existence of the bond, and of any liability on account of it were not dreamed of. The laches was that of the exceptants, and not that of the accountant.

Lastly, there was neither error of law apparent on the face of the decree, nor after-discovered evidence; and hence there was error in opening this decree.

*Hill Burgwin* and *D. T. Watson*, for the appellees.—The appellant did not take refunding bonds as she should have done, and was therefore guilty of a devastavit. Musser *v.* Oliver, 9 Harris 362; Swearingen *v.* Pendleton, 4 S. & R. 394. The decree of the court confirming her account as administratrix cannot be construed to authorize a distribution without taking refunding bonds: Tams *v.* Lewis, 6 Wright, 410; Lewis and Nelson's Appeal, 17 P. F. S. 165; Pry's Appeal, 8 Watts 254; Sergeant's Heirs *v.* Ewing, 12 Casey 163; Whelen's Appeal, 20 P. F. S. 428; Keech *v.* Rhinehart, 10 Barr 242; Thomas *v.* Riegel, 5 Rawle 266. Appellant is personally responsible for the amount of her devastavit. It was error to combine the administration and distribution accounts, and the decree of the court thereupon must be considered as referring only to and being only confirmatory of the administration account: Rittenhouse *v.* Levering, 6 W. & S. 200; Keech *v.* Rhinehart, 10 Barr 242; Flory *v.* Becker, 2 Barr 470; Yundt's Estate, 6 Barr 36; Ake's Appeal, 9 Harris 320; App *v.* Dreisbach, 2 Rawle 287; McLenachan *v.* Commonwealth to use, 1 Rawle 360; Hendrickson's Estate, 2 Pittsburgh Rep. 360; Commonwealth ex rel. *v.* Severn, 3 W. N. C. 303; Whelen's Appeal, 20 P. F. S. 428; Stewart's Appeal, 5 Norris 150; Charlton's Appeal, 7 Norris 476. The decrees of the court were therefore clearly right.

Mr. Justice TRUNKEY delivered the opinion of the court, January 2d 1882.

Samuel Jones died in 1862, leaving a widow and five children. In 1870 the administratrix of his estate filed her account, which was confirmed by the court, showing that a large amount of personal property had come into her hands, out of which she had paid certain debts and liabilities, leaving a balance of $22,567.70, which she had distributed to the widow and heirs. On November 8th 1852, Jones became surety upon a guardian's bond in the sum of $20,000. By final decree in 1878, it was determined that the guardian had in his hands the sum of $115,905.87 of the money of Mary C. Delafield, which sum he was ordered to pay to her. He was insolvent. In 1879, Mrs. Delafield obtained judgment against the administratrix of Samuel Jones, deceased, for the amount of the bond. The administratrix had no knowledge or notice of the existence of this debt until in the year 1877.

It is not pretended that Samuel Jones, if living, would have a defence, at law or in equity, against the payment of the debt; nor it is alleged that it is a debt which his administratrix was not bound to pay out of the moneys of the estate. But it is claimed that, under the Act of October 13th 1840, the confirmation of the account more than five years prior to the presenting of the petition by Mrs. Delafield protects the administratrix, and, also, that the laches of the petitioner in bringing knowledge of the existence of the debt to the administratrix relieves her from the consequences of the devastavit.

In passing it is sufficient to note that the blending of a distribution account with an administration account has often been condemned; an administration account, properly settled, shows nothing more than the balance due legatees, or distributees under the intestate laws, after payment of the debts and expenses of settling the estate. For the purposes of this case, it may be taken that the court approved the distribution set forth in the account.

As the petition, answer and pleadings, in proceedings in the Orphans' Court, are regarded as forming part of the decree, so is an administration account. The Act of October 13th 1840, not only gives the right of review to a party in interest upon proper showing, but fixes a limitation to petitions of review. It is none the less a limitation, because it does not begin to run in favor of an accountant who has perpetrated a fraud upon an interested party until discovery of the fraud by such party. Nothing in the facts of this case shows fraud, or other matter which tolls the limitation. Whether the review is demanded for error in law apparent in the decree, or for new matter which has arisen after the decree, or for new proof that has come to light since the decree, the statutory limit applies. The error in blending the distribution and administration accounts appears in

3 OUTERBRIDGE.—9

the decree.   If a decree, or part thereof, be void, it would be so treated without reference to this statute.

The right of creditors to be paid out of a decedent's goods was recognized, both at common law and by statute, long before the right of succession was secured to his children and kindred. When a man dies in Pennsylvania, his estate, real and personal, comes within the jurisdiction of the Orphans' Court, to be administered, first of all for the benefit of his creditors, and next for legatees, devisees, and heirs: Horner & Roberts *v.* Hasbrouck, 5 Wr. 169.   The personal estate is the primary fund for the payment of debts, but both personalty and realty are carefully hedged by statute against their appropriation to the prejudice of creditors.   Before the kindred of a decedent shall be entitled to receive the proceeds of the sale of his real estate, they shall give refunding security as directed by § 45 of the Act of February 4th 1834, and § 2 of the Act of May 23d 1871.   § 38 of the Act of 1834, P. L. 80, provides that no administrator shall be compelled to make distribution of the intestate's goods until after one year from the granting of the letters.   Sections 39, 40 provide for distribution of assets, after deducting all demands which have been made known to the administrator, under the direction of the Orphans' Court, and § 41 declares that before any person shall be entitled to receive any share in the distribution, he shall give security to be approved by said court, " with condition that if any debt or demand shall afterwards be recovered against the estate of the decedent, he will refund the ratable part of such debt or demand, and of the costs and charges attending the recovery of the same."   Where such security shall be taken the administrators " shall not be liable for the assets so paid or distributed, in respect to any claim or demand upon the decedent not previously made known to them :" § 57.   Administrators may make distribution, without application to said court, upon such security as may be satisfactory to them, nevertheless, at their own risk : § 58.

Refunding bonds are not required of a creditor to entitle him to receive his debt.   Where a decree of distribution is made to and among creditors, though a creditor of record who had not given the administrator actual notice of his claim, was omitted, the administrator may safely pay the assets in accordance with the decree : Cramp's App., 31 P. F. S. 90.   The bond is not for the benefit of legatees, or distributees under the intestate laws.   Where money has been paid by an administrator in pursuance of an order or decree of the Orphans' Court, a person entitled to a distributive share, or legacy, cannot charge the administrator personally for such money, nor is he entitled to a review as respects money so paid : Russell's Administrator's

App., 10 Casey 258; Stewart's App., 5 Nor. 149; Charlton's App., 7 Nor. 476; Hendrickson's Estate, 2 Pitts. R. 360.

Compliance by administrators with the Act of 1834 secures creditors of the estate in receiving their claims, notwithstanding payment of assets to legatees or distributees. "The object of the statute in requiring refunding bonds was to protect claims that might arise through mistaken or fraudulent settlements, as well as such that had not yet come to light. The only safe line of conduct for executors or administrators to follow is, to obey all the requisitions of the law. Governed by its directions, they will be protected by its shield. Disobeying its mandates, they must suffer its penalties:" Musser v. Oliver, 9 Har. 362. It appeared in that case that Jacob Moltz, who was guardian of Barbara Mann, after she became of age in 1835, settled with and took her receipt in full; Moltz died in 1838; his administrators settled their account in 1843 and distributed and paid the balance to the widow and heirs; in 1844 a petition in behalf of said Barbara was presented to the Orphans' Court, praying that Moltz's administrators be cited to settle an account of their intestate as guardian, resulting in a decree that a balance was due her of $1,972; and the administrators were fixed with a devastavit. Prior to 1834, there was a similar statute, under which administrators who distributed the assets without taking refunding security were held personally liable to creditors. Among the cases recognizing such liability are Thomas v. Riegel, 5 R. 266, and Pry's App., 8 Watts. 253. Whenever the question has arisen in this state, it has been ruled that the payment of assets to distributees under the intestate laws, without taking security to refund as prescribed by statute, is so contrary to the duty of administrators as to render them personally liable to creditors to the extent of such payments. Their liability under these circumstances is fixed by the plain terms of the statute. The security required is specially for protection of creditors whose claims are unknown by the administrators; and, before they were authorized to take such security, there was no mode by which they could distribute to heirs and relieve themselves of liability to such creditors.

It is unnecessary to consider whether the confirmation of the account was an adjudication of the distribution. Conceding that it was, the decree must be interpreted in the light of the statute. There is no conflict, no inconsistency between the statute and the decree. Had the administratrix taken security, approved by the court, her liability would have ceased. She paid without security, and it was at her own risk. It would be absurd to infer, from anything in the account and its confirmation, that the court directed the money to be paid without security and in violation of law. If the meaning of the decree were doubtful,

which it is not, it should be understood in the sense which is lawful, not that which is wholly outside the power of the court. The decree merely directed the distribution; the law declared the terms upon which the distributees were entitled to receive the money and the administratrix could pay it without risk.

The petitioner's judgment is conclusive of the legality of the claim against the estate. No statute of limitation bars it. No presumption of payment arises from lapse of time, or other thing. The law secures to creditors as full right to recover their claims against the estate of a decedent, as they would have if he were living. If the administratrix still had the assets in her hands, her duty to pay could not be denied. It is no fault of the petitioner that the assets have been distributed without refunding bonds. No act or laches on her part, exempts the administratrix from the consequences of the devastavit. Long established principles impel us to the conclusion reached by the court below. It may be a hardship upon the widow and children of the decedent to pay this debt, but it is the inevitable result of his executing the bond, the guardian being insolvent.

In an action at law against the administratrix to charge her personally with the debt, the admitted facts would be decisive. The better place to enforce the right is in the Orphans' Court, which has jurisdiction of the accounts of administrators, and of the estates of decedents for creditors. It is well settled that a creditor may enforce payment of a debt owing by a decedent's estate in the Orphans' Court.

Although we are of opinion that the petition was too late for a review of the decree confirming the account, yet without review the petitioner's right that the administratrix be charged with the assets improperly distributed, to the amount of her judgment, is clear, and the mode of doing it which was adopted reached the same result as if the order had been made upon the original petition. That form of procedure prejudiced no one's rights and is no cause for reversal.

Two appeals were taken: one to the decree ordering a hearing, and the other to the final decree. In the view we have taken, the case has been considered upon the appeal to the final decree, and this would have been so had we thought the review was rightly granted. The Act of 1840, P. L. 1, gives "like right of appeal to the Supreme Court as in other cases, except that the appeal shall be taken under the provisions of this act within one year after the decree made on the petition of review." The granting of a rehearing of so much of an account as is alleged to be error, is preliminary to the inquiry respecting such errors, and if the decree be against the petitioner, the original decree stands as it did before the peti-

[McCutcheon's Appeal.]

tion and during the time of the rehearing. If the order for a rehearing be called a decree, it is merely interlocutory. The refusal to grant a rehearing is final against the petitioner; but if a rehearing be granted, the questions therein are heard and considered, and then the decree is made upon the petition, from which the aggrieved party may appeal within the time limited. It is not the intendment of the statute to allow an appeal to an interlocutory decree, or order.

Decree affirmed, and appeal dismissed at the costs of the appellant.