## GEORGE'S APPEAL.

A bill of review, to correct a clear mistake in fact, on which a decree in partition was made, will lie more than three years after the decree, purchasers not having become interested in the estate.

FROM the Orphans' Court of Westmoreland.

The petition of one Cavett, one of the heirs of McKean, set forth his death, leaving three brothers, Robert being one, a sister, and the issue of another sister, his heirs. That he died seised of 160 acres, and that Robert, who had since died, had aliened his interest to Hartford. Partition was prayed, and an inquest awarded. Hartford having elected to take at the valuation, a decree to that effect was made August 21, 1843, and the next day he entered into the usual recognisances.

On the 24th August, 1846, one of the heirs named in previous proceeding, filed a petition for review, setting forth that the conveyance by Robert McKean to Hartford was but for 100 acres; and though he entered and claimed the whole, the other heirs of the decedent before the partition made, had recovered in ejectment from him four-fifths of the 100 acres sold to him; but that in the partition he was, through mistake, allowed to retain as his share one-fifth of the value of the 160 acres, whereas he was entitled to but one-fifth of the 100 acres sold to him by Robert.

The administrators and heirs of Hartford demurred to the petition, and the Court dismissed it.

*Foster*, for appellant.

*Kuhns*, contrà.

BELL, J.—It is conceded all round that in adjudicating the real estate late of Hugh McKean, the Orphans' Court has been led into an error by the mistake of the original petition, in stating the interest of James Hartford as alienee of Robert McKean, and to

whom the land was adjudged at the appraised value. Through this error, he has received a larger share of the estate than the conveyance under which he claims entitles him to. The object of the petition, brought up by this appeal, is to redress this wrong by rectifying the error. It is resisted by the respondents, the administrators of Hartford's estate, and his heirs, who deny the power of the Orphans' Court to overhaul its decree for the purposes of correction. If this be so, the parties injured must have been guilty of such negligence as bars them of the remedy they seek, for the wrong inflicted is not denied.

It must be admitted, that a Court of Chancery would not, in a case like this, entertain a bill of review; for here is neither suggestion of new matter discovered since the decree published, nor the averment of error apparent upon its face, one of which is said to be necessary to found such a prayer: 2 Madd. Ch. 537, et. seq.; Wilson v. Webb, 2 Cox, 3; O'Brian v. O'Connor, 2 Ball & Beatty, 154; nor can the decree complained of be regarded as wholly against the complainant, a feature also essential to a review in equity: Glover v. Partington, 2 Freem. 182; 3 Ch. Ca. 51. But where it is shown an injurious mistake exists, though in part ascribable to the party averring it, we do not think the Orphans'. Court ought to be deterred from its correction by the sole fact that it is not apparent in the unassisted record. Though it has been observed of these Courts that, in respect of the limited objects of their jurisdiction and their modes of proceeding, they are to some extent to be regarded as courts of equity, and a disposition has been manifested to mould their process, pleadings, and judgments, upon the forms that obtain in chancery, we have never held that they are bound by the same rigid rules of practice, or subject to the nice distinctions, in the administration of their jurisdiction, which time and the somewhat subtle temper of a bygone age contributed to impress upon the older tribunal: Com'th v. Judges of the Com. Pl., 4 Barr, 301; Brinker v. Brinker, 7 Barr, 53; Solliday v. Gruver, Ib. 452; Shaffer's App., 8 Barr, 43–4; Jenkins v. Jenkins, Ib. 246; Johnson's App., 9 Barr, 416. In conducting the business of our statutory courts, we may profitably consult the practice which obtains in the purely equitable tribunals, and the reasons that have led to its adoption. But this does not necessarily involve the self-imposition of shackles that there sometimes fetter the arm of justice by sacrificing truth to technical rule. The object should be to retain just so much of form as is necessary to the right understand-

ing and conduct of the cause, and to adopt the precepts that regulate the modes of procedure, so far as these contribute to the furtherance of right and the suppression of wrong.

In regard to the subject more immediately before us, we have recently had occasion to observe, more than once, that the Orphans' Court has from the beginning exercised the power of reviewing and modifying its proceedings and decrees, as an authority necessarily inherent and essential to the right discharge of its duties. On this point, no statutory direction was given till the Act of October, 1840, which, however, is confined to reviews of alleged errors in the settled accounts of executors, administrators, and guardians. This limits the period within which a review may be had in such cases to five years, but it leaves untouched the pre-existing practice in all other instances. Being thus unrestrained by the written law, I see no objection to the liberal exercise of the right to rehear and redress for the correction of manifest mistake involving injury, tempered, however, by the application of a sound discretion, seeking to protect the rights of third persons, and which, in most cases, would dictate a refusal to interfere when the relative position of the original parties was materially changed, or the interests of third persons might be put to hazard. In estimating such a contingency, the time which had elapsed since the decree complained of, would of course enter largely into the consideration of the Court; and, where this was much extended, might of itself afford a sufficient objection to bar the prayer for relief. It is said that in England, in the time of Lord Guildford, there was no limitation for a bill of review: Fetton v. Macclesfield, 1 Vern. 287; though in Goddard v. Goddard, Ch. Rep. 139, it was not permitted sixteen years after a decree, and it now seems to be the rule not to reverse on review after twenty years, except for very apparent error. But a review will be allowed even after twenty years, in favour of persons under the disabilities specified in the statute of limitations: Smith v. Clay, 3 Bro. Ch. Ca. 639, S. C. Amb. 645; Lytton v. Lytton, 4 Bro. Ch. Ca. 458. As a bill of review is in the nature of a writ of error (Dennison v. Goehring, 6 Barr, 403), it is probable this period of twenty years was adopted by analogy, from stat. 10 &, 11 Wm. 3, c. 14, limiting writs of error in certain cases; and should it become necessary with us to fix the time within which a review may be granted, the period will probably be much abridged by reference to our Acts of 1791, prohibiting writs of

error after seven years, or, it may be, to the Act of 1840, just mentioned.

In the case in hand, the petition praying correction of the decree of adjudication was presented to the Court in three years and two days after Hartford entered into recognisance to secure to the other parties in interest, payment of their distributive shares. Without attempting to indicate a time of limitation generally applicable, I think we may safely say an inaction of three years ought not to be deemed such laches as would induce the Court to refuse its aid, especially as it is understood the lands are yet in the hands of Hartford's representatives, the purchase-money unpaid, and everything remains as at the time of the decree. I cannot, therefore, perceive that any danger of injustice to others will result from entertaining the petition, and as the Orphans' Court has assigned on the record no reasons for its refusal, and none of weight were suggested on the argument, it appears to us to be a case in which, in the exercise of a sound discretion, the Court ought to exert the power that undoubtedly belongs to it, by calling the parties to show cause why mistakes in fact, if they exist, should not be corrected. I am aware that in Painter v. Henderson, 8 Barr, 48, it was said the only remedy for an erroneous decree in the Orphans' Court is by appeal to this Court, under the Act of 1832. But it is to be observed, that the point there under consideration was whether such a decree could be impeached in a collateral suit; the question of review by the Court itself was not mooted. Nor am I unmindful that in Good v. Herr, 7 Watts, 253, the Common Pleas, in an action of debt sur recognisance acknowledged in the Orphans' Court, refused to relieve against an erroneous decree of that Court, founded in a mistake of law committed by the parties. But that case was put upon the ground that equity will not relieve against a contract made in misapprehension of the law, a principle which does not interfere here; and besides, that was a collateral proceeding, in which, of course, the decree could not be overhauled. The same was the case in Herr v. Herr, 5 Barr, 428, and in Lockhart v. John, 7 Barr, 137, the interference of the Orphans' Court, setting aside the first sale on mere motion, and without notice to any one, was justly held as of no effect to divest the title. Of the objections which prevailed in those cases, the present is entirely free. As an attempt to overhaul proceedings in partition, it is perhaps in our practice somewhat novel, but the many clumsy attempts made to reach the same object, indicate the necessity of a remedy. If we compare it to a

writ of error *coram vobis*, which it strongly resembles, 2 Saund. 100, note, we at least find a parallel in principle; and if it be objected that the mistake complained of ought to have been attended to in the beginning by the petitioner, it may be answered that the same duty was incumbent on Hartford, who was best acquainted with his own title: Beason *v.* Beason, 9 Barr, 290–1. On the whole, I repeat that, as the case is now presented, we see no valid objection to the review prayed.

Wherefore the decree of the Orphans' Court, dismissing the petition of John George, is reversed; and it is ordered that the record be remitted for further proceedings.