MARY S. BOND *et al.*

*v.*

RUFUS W. RAMSEY.

89    29
72a   342
89    29
174   502

1.  VENDOR AND VENDEE—*resisting payment of notes for price.* Although an executor's deed may be defective in purporting to convey his own individual interest in real estate, he having no legal interest in it, but only a naked power to sell, still, the purchaser acquires an equitable estate by the deed, which he must reconvey, or offer to reconvey, before he can make any defense to the payment of the notes given for the purchase money.

2.  If an executor, under a power, agrees to sell and convey all the interest of his testator in land, even if the first deed made only purported to convey the interest the executor had in the property, yet, if another deed is made and tendered before suit brought for the recovery of the purchase money, which does convey all the interest the testator had, this is all the purchaser can exact, and a recovery may be had.

3.  To authorize a purchaser of real estate in resisting payment of the purchase money on the ground he was induced to make the purchase by the representation of the vendor, the executor of a will, that the title was perfect in the testator, which was not true, there must have been such fraud on the part of the vendor as would authorize the vendee to rescind the contract *in toto,* by reconveying whatever estate he may have obtained under the executor's deed.

4.  RESCISSION—*party must make his election.* To resist the payment of the purchase money of land for fraud, the purchaser must elect to rescind the contract, and it is doubtful whether his grantees, after his death, can reconvey the property, so as to work a rescission of the contract and enable him to resist payment.

5.  SALE—*caveat emptor applies to executor's sale.* In the absence of actual fraud on the part of an executor to induce the purchase of land of his testator, the rule of *caveat emptor* applies in all its strictness. The general rule is, that in such sales a purchaser, taking no covenants to cover defects in title, is absolutely without relief, unless a fraud has been practiced upon him sufficient to vitiate the contract.

6.  FRAUD—*in false representations by vendor.* Fraud in the sale of lots by an executor is not shown by proof of his expressing the belief, or opinion, the title was good, when it was not, as such opinion may have been honestly entertained; and to avoid a sale of property on the ground of false representations by the vendor, the purchaser must have relied upon them, and not upon his own judgment or knowledge.

APPEAL from the Circuit Court of Clinton county; the Hon. AMOS WATTS, Judge, presiding.

This action was brought in assumpsit, by Mary S. Bond and Joshua S. Bond, executors of Leah P. Webster, deceased, on two promissory notes given by John P. Blackwell, since deceased, with Rufus W. Ramsey as surety. It is proved the notes were given for the purchase money of real estate that had belonged to decedent, and had been sold at public sale by the executors, under the provisions of her will, which conferred a naked power upon the executors to sell all real estate of which she died seized, or any interest therein.

The defense was made upon three grounds, set forth in as many special pleas:

1. That the notes were give in consideration of the execution of a deed from plaintiffs to Blackwell, purporting to convey to the latter certain lots with covenants of warranty, seizin of Leah P. Webster, and right and power of the plaintiffs, her executors, to convey, averring want of ownership or seizin of Leah P. Webster, and power in executors to convey; that Webster and her executors had no right or title whatever to the property, and that the title to the same was the sole consideration for the notes, and avers tender to plaintiffs of deeds of release, and eviction by superior title.

2. That the notes were given in consideration plaintiffs would execute to Blackwell a deed conveying all the right, title and interest Leah P. Webster had, at the time of her death, in and to the lots, and averring a failure to execute such a deed.

3. That the notes were given for the conveyance of all the right, title and interest of Leah P. Webster in and to the lots sold; that plaintiffs represented at the sale that she died seized thereof in fee simple, and had a good and perfect title thereto, and thereby Blackwell was induced to buy the property at its full value, and execute the notes; that she did not die seized of the lots, which plaintiffs knew; nor did they convey a fee

simple title of the lots, or any other title held or possessed by decedent to Blackwell, but conveyed their interests as executors, and not that of Leah P. Webster; that Blackwell and wife conveyed the lots to Prudence Craig, and the latter to Mary Blackwell; that John P. and Mary Blackwell are both dead, and that prior to the death of Mary Blackwell, and before the commencement of this suit, a deed, conveying all the interest acquired by the executors' deed, was tendered plaintiffs, and also a similar deed from Prudence Craig; that the conveyance of the fee simple title to the property was the only consideration of the notes, and also averring an eviction by paramount title in Hill.

Replications putting in issue the matters set forth in the several pleas, and also a replication averring the execution and tender of a subsequent deed conveying to his grantees all the interest of decedent in the property sold to Blackwell, were filed, upon which issues were joined.

Under the evidence produced, the jury to whom the cause was submitted found the issues for defendant.

A motion for a new trial was overruled by the court, and judgment rendered on the verdict, to reverse which plaintiffs bring the case to this court on appeal.

Messrs. W. & E. L. STOKER, for the appellants.

Mr. G. VAN HOOREBEKE, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

On the first appeal, the judgment in this case was reversed, principally on the ground, although the executors' deed might have been defective as purporting to convey their own interest, only, in the property, they having no legal interest in it, but only a naked power to sell, still, the purchaser must have acquired an equitable estate by the deed, which he should have reconveyed, or offered to reconvey, before he could make any defense to the payment of the notes given for the purchase money. That difficulty has been obviated, so far as it is pos-

sible to do so, by the execution of deeds of release by the grantees of the purchaser, which have been tendered in court for the benefit of the executors, if they choose to accept them.

Neither deed made by the executors to the purchaser of the property involved in this litigation contains any covenants of warranty or seizin of decedent, nor of their right and power to convey the property; and there is, therefore, a total want of evidence to sustain any defense to the notes on which the action is based because of the breach of any covenant in the particular alleged.

Conceding the first deed made only purported to convey the interest the executors had in the property, the second, made and tendered before this action was brought, did convey all the interest decedent had in the property at the time of her death, which was all the purchaser could exact. There is no reason for any just complaint on that score.

The point most confidently relied on in the defense is, that the purchaser was induced to buy the property by the representations of the executors, made at the time, that the title was perfect in decedent, and the title being what he in fact bought, that failing, there was a total failure of the consideration of the notes. That proposition certainly can not be maintained, unless there had been such fraud on the part of the executors as would authorize the vendee to rescind the contract *in toto*, on reconveying whatever estate he may have obtained under the deed. One difficulty in the way of interposing that defense at that time is, that the vendee did not elect to rescind the contract for that or any other reason, and it may well be doubted whether his grantees, since his death, can reconvey the property, so as to work a rescission of the contract. He had transferred the property, and may have deliberately elected to abide the contract, trusting to his ability to defend the title, or he may have known there was no cause for a rescission.

But waiving that view, it is not perceived how the purchaser, if living, could rescind the contract, or, what is equivalent to the same thing, avoid the payment of the notes given

for the purchase money of the property conveyed to him. It is conceded the rule of *caveat emptor* applies to such sales as this, and there is no exception to the rule, except where there has been such fraud practiced by the vendor as will authorize the vendee to recover the money back in case the contract has been executed, or to detain it where the contract is still executory. The general rule on this subject is, in such sales a purchaser who has no covenants that cover defects in the title is absolutely without relief, unless a fraud has been practiced on him in the sale that will vitiate the contract. There is no proof of any actual fraud in this case practiced by either of the executors to induce the making of the sale, and the rule of *caveat emptor* may be applied in all its strictness. The executor who made the sale may have expressed the belief the title to the property he was about to sell was good, and yet have been guilty of no actual fraud. That opinion may have been honestly entertained. The executor, however, unequivocally denies that he made any representations as to the title of the property; but whether he did or not, it does not appear the purchaser relied on such representations. That is evident, for two reasons—first, he accepted a deed from the executors, containing no covenants as to the title to the property; and second, in a conversation had, before the notes were signed, with defendant, who is surety on the notes, and who seems to be a very candid witness, deceased told him they were for lots bought at the sale of the estate of Leah P. Webster, at a public sale, and defendant then told him that "at such sales he must look out for himself about title; that he bought at his own risk as to title," and his reply was, "he thought the title was good." He did not pretend he had purchased the property on the assurances of the executors as to the sufficiency of the title, but what he did say, shows he relied on his own judgment.

This view being conclusive of the whole case, we do not deem it necessary to remark upon other points made on the argument. As no specific objections have been pointed out in

the instructions given for defendant, we have not considered the general objection taken. On another trial, the court will, no doubt, make the instructions conform as near as may be to the law as indicated in this opinion.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*