### In re Estate of Harry M. Higinbotham, Deceased. Robert Pilcher, Appellant, v. Henry A. Blair et al., Executors, Appellees.

#### Gen. No. 29,180.

ESTATES OF DECEDENTS—*right of purchaser of land from executors on sale under testamentary power to refund of overpayment.* Where a mutual mistake was made in the sale by the executors of an estate of a tract of land to petitioner, consisting of 327 acres, in that 20.55 acres did not belong to the estate and it appears that it was the intention of the executors, holding a power given by will, to sell the land, not merely to give a quit claim deed thereto and that the conveyance was by a "bargain and sale" deed, and, it not being a judicial sale, the doctrine of "*caveat emptor*" should not be applied, the executors will be required to refund the money received for the 20.55 acres, the funds still being in their possession.

Appeal by plaintiff from the Circuit Court of Cook county; the Hon. JOHN A. SWANSON, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1924. Reversed and remanded. Opinion filed October 30, 1924. Rehearing denied November 15, 1924.

ALDEN, LATHAM & YOUNG, for appellant; CHARLES MARTIN, of counsel.

J. T. BORDER, for appellees.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Robert Pilcher filed a petition in the probate court
of Cook county, where the estate of Harry M. Higin-
botham, deceased, was being administered, praying
that the executors of his estate be ordered to refund
to him certain moneys he had paid to them as part
of the purchase price of certain lands, which the ex-
ecutors had sold to him, for the reason that the execu-
tors had no title to part of the lands. A hearing was
had in the probate court and an order entered dismiss-
ing the petition. An appeal was taken to the circuit
court of Cook county, and after a hearing in that court
an order was entered dismissing the petition and this
appeal followed.

The executors filed an answer to the petition and
took the position that even admitting the allegations
of the petition as amended to be true, Pilcher was
entitled to no relief, and, therefore, it would be un-
necessary to go into the evidence at large, so that
the only evidence introduced was a copy of the last
will and testament of the deceased. And there was
an agreement between counsel that the deed of con-
veyance which was given by the executors to Pilcher
was what is known as a ''Grant, bargain and sale''
deed as defined in section 8, ch. 30 of the Revised
Statutes of Illinois [Cahill's Ill. St. ch. 30, ¶ 8] and
that the petitioner did not intend to charge in his
amended petition that the executors were guilty of
actual and wilful fraud and deceit in the matter, so
that the matter turned on the question as to whether
the petitioner was entitled to the relief which 'he
sought, assuming that the facts alleged in his amended
petition were true.

The petitioner set up that in the month of June
or the early part of July, 1920, Pilcher entered into
an agreement with the executors for the purchase of
a tract of land situated in Joliet and consisting of
approximately 327 acres; that the executors repre-
sented to Pilcher that the land was owned by the

estate of Higinbotham in fee simple, free from all incumbrances, claims and liens; that they were given full power by the will of the deceased to sell and convey a good and indefeasible title to the entire tract of land; that it was agreed that Pilcher should pay them $55,000 in cash for the land; that the land consisted of ten different tracts which were fully described in the inventory filed in the probate court of Cook county; that four of the tracts contained approximately 20.55 acres; that a fair and reasonable value of these four tracts at the time the contract was entered into between the parties was $15,000.

It is further alleged in the petition that at the time the contract of purchase was entered into the executors knew that Pilcher desired to acquire the 327 acres for the purpose of donating it to the City of Joliet for a public park; that the four tracts containing the 20.55 acres were so located as to connect with the Joliet city park; that Pilcher, believing and relying upon the representations made by the executors that the estate had an absolute fee title to the 327 acres of land free and clear of all incumbrances, paid the executors $55,000 in cash for the 327 acres and received from them a deed of conveyance therefor, which deed was filed for record in the recorder's office; that shortly thereafter the petitioner donated and gave the 327 acres of land for a public park, executing a proper deed therefor. It is further alleged that after conveyance of the 327 acres of land, one Harlow D. Higinbotham, a brother of the deceased, claimed to own the 20.55 acres by conveyance made to him by his father, Harry M. Higinbotham, and that the estate of Harry M. Higinbotham had no right, title or interest to the 20.55 acres, and it is further alleged that Harlow D. Higinbotham demanded $20,000 for the 20.55 acres, but finally agreed to accept $15,000 for it.

It is further alleged that at the time the executor delivered to Pilcher the deed and received from him

the $55,000 in payment of the land, an abstract of title was not furnished, but that the executors represented that the title to the 327 acres of land was good. The petitioner received the deed and paid over the money without an examination of the title. Afterwards Pilcher filed an amendment to his petition, wherein he set up that in January, 1922, Harlow D. Higinbotham filed a bill in the circuit court of Will county, claiming that he was the owner in fee simple of the 20.55 acres and praying that the deed from the executors to Pilcher and his deed to the City of Joliet be removed as they were clouds on his title; that the executors, Pilcher and the City of Joliet were made defendants, and after hearing a decree was entered in that case finding that the 20.55 acres was the property of Harlow D. Higinbotham and the deeds were removed as clouds. This decree was upon appeal affirmed by the Supreme Court of this State. *Higinbotham v. Blair*, 308 Ill. 568. The prayer of the petition was that the executors refund to Pilcher the sum of $15,000, which was a fair and reasonable value of the 20.55 acres.

In this court both parties have argued the case as though the probate court had passed on the merits. In our decision we shall assume this to be a fact, although upon looking into the record we find that the probate court dismissed the petition for want of jurisdiction.

From the foregoing statement, it appears that the executors have been paid by Pilcher for 20.55 acres of land which they did not own, had no interest in and to which they conveyed no title. Equity and good conscience require that the estate ought not to be augmented in this manner and the executors ought to be required to refund what they had received for this 20.55 acres, unless to do so would violate some positive rule of law.

The executors' position is that they did not war-

rant the title to the land, but contend that the deed they gave, being merely a "bargain and sale" deed which by the statute on conveyance is made a special warranty against the acts of the grantors, only and in such case the doctrine of *caveat emptor* applies, there being no charge of fraud against the executors and they further contend that no relief can be had for any defective title. In support of this they cite: *Bond v. Ramsey,* 89 Ill. 29; *Owings v. Thompson,* 4 Ill. 502; *Thorkildsen v. Carpenter,* 120 Mich. 419; *Earle v. DeWitt,* 6 Allen (88 Mass.) 520; *Barkhamsted v. Case,* 5 Conn. 528; *Gibson v. Richart,* 83 Ind. 313.

The *Bond* case was an action of assumpsit brought on two promissory notes which were given for the purchase of real estate which was sold at public auction by the executors. The defense interposed was that there was no consideration for the notes, because the executors had no right to make the conveyance, and that the property did not belong to the estate of the deceased. There was a verdict and a judgment in favor of the defendants. The court there said that the point relied upon by the defense is "that the purchaser was induced to buy the property by the representations of the executors, made at the time, that the title was perfect in decedent, the title being what he in fact bought, that failing," there was no consideration for the notes. The court held the position could not be sustained unless there had been such fraud on the part of the executors as would authorize a rescission of the contract *in toto,* and said that the grantee had not elected to rescind, but had transferred the property and may have deliberately elected to abide the contract, trusting to his ability to defend the title, and continuing the court said (p. 33): "It is conceded the rule of *caveat emptor* applies to such sales as this, and there is no exception to the rule, except where there has been such fraud practiced by the vendor as will authorize the vendee to recover the

money back in case the contract has been executed * * *. The general rule on this subject is, in such sales a purchaser who has no covenants that cover defects in the title is absolutely without relief, unless a fraud has been practiced on him in the sale that will vitiate the contract. There is no proof of any actual fraud in this case practiced by either of the executors to induce the making of the sale, and the rule of *caveat emptor* may be applied in all its strictness. * * * That opinion may have been honestly entertained. The executor, however, unequivocally denies that he made any representations as to the title of the property; but whether he did or not, it does not appear the purchaser relied on such representations * * *. He did not pretend he had purchased the property on the assurance of the executors as to the sufficiency of the title, but what he did say shows he relied on his own judgment." In that case it will be noted that the court held that in a sale of real estate by executors, there being no covenants to cover defects in the title, the grantee is without remedy in case there is a defect in the title unless the sale was brought about by fraud. In that case, which was approved by the Supreme Court in the case of *Shup v. Calvert*, 174 Ill. 500, the rule there announced is qualified to the effect that *caveat emptor* applies to sales of real estate by administrators and that the purchase of such property has no remedy in the "absence of fraud or *mistake*" entering into the transaction. In the *Bond* case, the quotation from the opinion above discloses that the purchaser of the property did not rely upon the representations made by the executors as to the title, but upon his own knowledge, while in the instant case the petitioner alleged that he relied and acted upon representations made by the executors.

In *Owings v. Thompson*, land was sold at a judicial sale and suit was brought on notes which were given for the purchase price. The court there held that where

notes are given for the purchase of land, in the absence of any agreement that the title is good or that the notes shall not be paid if the title fails and in the absence of fraud, although untrue representations are in fact made as to the title, a failure of the title will not constitute a failure of the consideration of the notes. And the court there further held that in the absence of any agreement that the title was good it was no defense to the note that the title was afterwards found bad and said (p. 508): "Those cases show that in the absence of fraud, and in the absence of any specific agreement for a particular title, the purchaser takes the title at his own risk." And continuing the court said (p. 509): "Nothing like fraud is pretended and the word agreement, or its equivalent, is not found in either plea." There was a concurring opinion by Justice Treat, who held that the rule of *caveat emptor* applied because the property was sold at a judicial sale. The instant case is unlike the *Owings* case in that it is alleged in the petition that the executors represented that they owned the property and agreed to deliver a good and indefeasible title to the 327 acres of land to Pilcher.

In *Thorkildsen v. Carpenter*, the grantor had only a tax title to the property, which was known to the grantee. In a suit by the grantee for the refunding of a part of the consideration, the court held that it was evident that the grantee in purchasing the property was speculating on the validity of the tax title.

In *Earle v. DeWitt*, the defendant and a third party agreed to buy some property at a sale by the assignee of an insolvent corporation. The property was bought and later it developed that the assignee was illegally appointed. The purchaser claimed an undivided half interest in the real estate conveyed to him by the assignee. No representation as to the nature of the title was made by the defendant to the plaintiff, the latter knew as much about the title as did the defendant.

And it was held that an action brought to recover back the money paid in consideration of the deed by the defendant to the plaintiff, the title having failed, would not lie. The court there said (p. 526): ''If the plaintiff had paid her money for a mere quitclaim deed, there being no evidence or even allegation of fraud, but merely a mistake of the parties as to the title * * *, it is well settled that the plaintiff could not, upon failure of the title, recover back the consideration paid.'' The court there analyzed the authorities at considerable length in reaching this conclusion. There is a strong dissent by Justice Merrick, where he points out that in none of the cases discussed was there a common and mutual mistake of fact in regard to the title of the property.

In the case of *Barkhamsted v. Case,* it was held that the failure of the title in the vendee of the land through the grantor's want of title without fraud on the part of the grantor was no ground for relief in equity against the security given for the purchase money, but the maker had adequate remedy at law by defense against the note.

In *Gibson v. Richart,* the Supreme Court of Indiana held that in the absence of fraud, accident or mistake, a failure of title to real estate conveyed without covenants, when the grantee continues in undisturbed possession under his deed, is no defense to an action for the purchase price. The court said (p. 314): ''It is settled law here, as elsewhere, that in the absence of fraud, accident or mutual mistake, a failure of title to real estate so conveyed is no defense to an action for the purchase price, and especially must this be so when the grantee continues to hold the deed, and has not been disturbed in the possession under it, and when it does not appear that a hostile or paramount claim has been asserted.''

In the instant case it is clear that there was a mutual mistake made by Pilcher and the executors; they

both being of the opinion that the 20.55 acres belonged to the estate of the deceased. From the allegations of the petition, which are admitted, it is clear that Pilcher did not pay $55,000 to the executors for the mere execution of a quitclaim deed to him of the 327 acres of land, but on the contrary that he paid him the money for the land itself. In 39 Cyc. it is said (p. 1694): "If the deed purports and is intended to convey only the right, title and interest in the land as distinguished from the land itself, it comes within the strict sense of a quitclaim deed and will not sustain the defense of innocent purchaser. If it appears that it was the intention to convey the land itself, then it is not such quitclaim deed, although it may possess characteristics peculiar to such deed and the purchaser is entitled to the protection of a bona fide purchaser." The sale of the 327 acres of land was not a judicial sale and the doctrine of *caveat emptor* ought not to be applied. We think under the law the executors ought to refund the money they received from Pilcher for the 20.55 acres of land, the funds still being in their possession. *Welch v. Hoyt*, 24 Ill. 117, 118; *Kirkwood v. Kidwell*, 72 Ill. App. 492; 39 Cyc. 1281; *Holden v. Reed*, 45 Tex. Civ. App. 465, 101 S. W. 288; *Thoma's Estate*, 22 Pa. Dist. Rep. 373.

In the *Hoyt* case, suit was brought on a promissory note given to the administrator for part of the purchase price of a buggy. The defendant interposed the defense that there was a partial failure of the consideration; that the buggy was warranted to be good and of sound material, when in fact it was poor material. The court there said (p. 118): "If the law did not authorize the administrator to bind the estate by a warranty of the articles sold, neither will it authorize him by means of a false warranty to sell the buggy for double its value, and after receiving its full value in cash, procure the purchaser's note for as much more, and then collect the note. The law will

not sanction that mode of increasing the amount of the assets of an estate for the benefit of creditors, at the expense of innocent parties. No just law for the government of an upright, fair-dealing people, contains any such traps as this. An estate cannot and should not be augmented in this way."

In the *Kirkwood* case, an executor and trustee sold land belonging to the estate and received cash and notes in payment. Afterwards the purchaser was ejected by a third party. Later the purchaser filed an intervening petition in a suit pending in the circuit court of Moultrie county, asking that the purchase money be refunded to him. The decree awarding that the money be refunded was affirmed. Mr. Justice Harker in delivering the opinion of the court said (p. 494):

"It is earnestly contended that there is no liability against the trustee because in the transaction for the sale of the land Meeker acted merely as a judicial officer and had no power in law to bind the heirs by a warranty deed. We do not think the contract can be looked upon in the light of a judicial sale. * * *

"It appears from the evidence that Kidwell most earnestly and stubbornly defended the ejectment suit. He paid his money and made improvements on the land in the faith that he would receive a good title. The estate has had the benefit of the purchase money paid and it is but equitable that Kidwell should have it returned to him, even if it be conceded that Meeker exceeded his authority as trustee when he contracted to execute a warranty deed."

In the *Holden* case, the defendant sold to plaintiff three sections of school lands, the conveyance being in the usual form of transfer of such lands, conveying all defendant's right, title and interest with special warranty, using in the granting clause the terms: "Bargain, sell, release and forever quitclaim." It was held by the Texas court that, irrespective of the form of the conveyance, there having been a mutual

mistake in believing that the vendor had title to a portion of the tract, while in fact he did not, the purchaser was entitled to sue for an abatement of the purchase price.

In the case of *Thoma's Estate,* it was held that the rule of law that *caveat emptor* applied to judicial sales was subject to an exception. The court there said:

"But there is a well-recognized exception to the rule where a mistake has been made by court or parties and the fund is still *in gremio legis.* 'We have no doubt,' said Mr. Justice Gordon, in *Milne's Appeal,* 99 Pa. 483, 'about the power of the Orphans' Court to review and correct its former adjudications, if in these adjudications it discovered a palpable mistake, produced either by its own inadvertence or by the blunder of the parties. A sense of fair dealing and justice would be authority enough, in the absence of any other, for so holding.' *Actus curiae nominem gravabit.* Thus a 'clear mistake' made in proceedings for partition was corrected in *George's Appeal,* 12 Pa. 260, three years after the final decree. So a mistake in a deed made by a trustee was amended in *Nimick's Estate,* 179 Pa. 591, eight years afterward. So in *Johnson's Appeal,* 114 Pa. 132, a sale made under the Act of 1853 on petition of a guardian was set aside four years after delivery of the deed on the ground of mutual mistake as respected the quantity of land. 'The Orphans' Court,' said Mr. Justice Paxson, 'still retains its grasp of the guardian and the fund. Both are absolutely within its control. That the guardian cannot retain it in equity and good conscience is too plain for argument.' So in *McCaffrey v. Gibney,* 223 Pa. 368, where a guardian made a sale under the mistaken belief of all parties interested that he could convey an absolute title, the court ordered a resale five years afterwards. 'When the wrong done to the purchaser became manifest and was shown to the court,' said Mr. Justice Potter, 'its action in response was only that which right and justice demanded.' These cases sufficiently illustrate the plastic character of Orphans' Court jurisdiction in matters of mistake.

They exhibit the essential element of imperative equity and familiar equitable methods of relief by re-execution, reformation and rescission. The present case falls within the principle which underlies these cases. 'In equity and good conscience' the vendee is entitled to the relief sought. By mutual mistake more land was sold than the vendor had right to convey, by reason of which the purchaser is injured to the extent of the excess of the purchase money paid. The executor has in his hands so much more than he was entitled to receive, and that which in equity and good conscience he ought not retain. Objection is made that by the exercise of ordinary diligence the purchaser could have discovered the discrepancy in quantity; but it does not lie in the vendor's mouth to say so, because he himself was mistaken as to the quantity of land and by the description in his deed misrepresented the fact of quantity. Even though the injurious mistake is in fact ascribable to the purchaser, this court ought not be deterred from granting relief by the sole fact that it is not apparent on the face of the record. *George's Appeal,* 12 Pa. 260.''

In the instant case there was a mutual mistake as to the number of acres owned by the estate. The executors represented to Pilcher that the estate owned the 327 acres of land and he relied upon this representation and paid them $55,000. He did not receive the 327 acres of land because 20.55 acres of it did not belong to the estate. In equity and good conscience the money does not belong to the estate and the probate court ought to see that it is refunded, as in such matters they exercise equitable jurisdiction. *Tisdale v. Davis,* 198 Ill. App. 116.

The judgment of the circuit court of Cook county is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

THOMSON and TAYLOR, JJ., concur.