## Donovan Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Sterling, Magaziner, Stern & Levy,* for exceptant.
*Ballard, Spahr, Andrews & Ingersoll,* contra.

SHOYER, J., December 6, 1963.—We are all agreed that the action of the learned hearing judge in granting the petition for review was a proper exercise of his judicial discretion and there is no merit either at law, or in equity, to the exceptions of Robert W. Donovan, who is the only party adversely affected by the court's decree.

William J. Donovan died October 15, 1961, leaving a holographic will whereby he, inter alia, bequeathed to

his son, Robert, the sheet metal business of Wm. J. Donovan Co., "which includes the following:

"I give to Robert W. Donovan my son the real estate known as 2239 to 47 North 27th Street Phila 32 Pa., also all machinery, tools, equipment, truck, raw material and supplies in stock at the time of my death, any material or equipment bought after the month of my death it is to be charged to my son Robert W. Donovan if it is not billed at the end of the month of my death. All contracts or orders are to be parcel billings if there is any material or labor furnished on these contracts or orders at the end of the month of my death in order to arrive at the accounts receivable. All bills payable are to be paid at the end of the month of my death, also Margaret Spangler [an employe] gift is to be paid, the remaining cash in banks and accounts receivable are to be divided 40% to my son James J. Donovan and 60% to my son Robert W. Donovan. I also leave to my son Robert W. Donovan all my bonds of the Broad Street Trust Company. I leave to my son James J. Donovan the United States Bonds (13000.00) Dollars . . . In leaving the Wm. J. Donovan Co. Sheet Metal business to my son Robert it is not because of any greater love and affection for Robert than James but it is my honest belief that my son Robert possesses the determination to continue the business and that he will offer employment to my son James if he is able and willing."

Robert, who was nominated as executor, probated the will and was granted letters testamentary by the register of wills. Thereafter Robert duly filed his account which was called for audit before the Honorable Joseph D. Burke on June 4, 1962. James, although given written notice of the audit pursuant to rule of court, failed to appear and a continued date was set for June 20, 1962, of which he was also given prompt written notice. Having failed to appear on the latter

date, the learned auditing judge received a memorandum of law from counsel for the executor and on June 26, 1962, the learned auditing judge filed his adjudication, in the course of which he awarded the business bank accounts and the business accounts receivable to Robert, leaving the personal accounts (checking and savings) to be divided between Robert and James in the proportion of 60 percent to the former and 40 percent to the latter.

A schedule of distribution was ordered to be filed within 90 days, which date was subsequently extended at the request of counsel for the accountant because of unsolved problems in connection with the federal estate tax return. This schedule of distribution has not yet been filed.

On December 17, 1962, James, now represented by counsel, filed his petition to open the adjudication for the purpose of review and reaudit as to the bank accounts and accounts receivable of Wm. J. Donovan Co. After answer filed the matter was referred to Judge Burke "for a hearing thereon." Following the hearing, the learned hearing judge granted the petition and opened the adjudication "for the purpose of review of the dispositive provisions of the Will." Counsel for Robert complains that the action of the court in opening the adjudication was error because the matters alleged for relief do not come within the provisions of section 721 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.721, which reads as follows:

"Rehearing; Relief Granted.—If any party in interest shall, within five years after the final confirmation of any account of a personal representative, file a petition to review any part of the account, . . . or of the adjudication, or of any decree of distribution, setting forth specifically alleged errors therein, the court shall give such relief as equity and justice shall require: Provided, That this section shall not authorize review

as to any property distributed by the personal representative in accordance with a decree of court before the filing of the petition . . ."

The commission's comment is to the effect that this statute was derived from section 48 of the Fiduciaries Act of June 7, 1917, P. L. 447, which in turn was taken from the Act of October 13, 1840, P. L. (1841) 1, sec. 1. The whole purpose of this early act, as has been held in Kinter's Appeal, 62 Pa. 318, and other cases, was to give to a petitioner who complied with its requirements the right to demand that which, before the passage of the act he could have obtained only by a successful appeal to the discretionary power of the court. But the broad equitable powers of an orphans' court to correct its errors in aid of an injured party were in nowise limited or restricted.

In the early case of George's Appeal, 12 Pa. 260, 262, our Supreme Court recognized "that the Orphans' Court has from the beginning exercised the power of reviewing and modifying its proceedings and decrees, as an authority necessarily inherent and essential to the right discharge of its duties. On this point, no statutory direction was given till the Act of October 1840, which, however, is confined to reviews of alleged errors in the settled accounts of executors, administrators and guardians. This limits the period within which a review may be held in such cases to five years, but it leaves untouched the pre-existing practice in all other instances. Being thus unrestrained by the written law, I see no objection to the liberal exercise of the right to rehear and redress for the correction of manifest mistake involving injury, tempered, however, by the application of a sound discretion, seeking to protect the rights of third persons, and which, in most cases, would dictate a refusal to interfere when the relative position of the original parties was materially changed, or the interests of third persons might be put to hazard.

In estimating such a contingency, the time which had elapsed since the decree complained of, would of course enter largely into the consideration of the Court; and, where this was much extended, might of itself afford a sufficient objection to bar the prayer for relief."

In Mitcheson's Estate, 11 W. N. C. 240, Judge Penrose said: "If the facts as set forth by the petition are true, we have no doubt as to our power to grant the review, irrespective of the Act of 13 October, 1840; . . . and where no rights have changed in consequence of the decree this power of correction will be liberally exercised, notwithstanding the fact that error does not appear on the face of the record, or that new matter is not averred or shown."

Many other authorities could be cited to the effect that the Act of 1840 and its successors, while they limit the time within which a petition for review must be presented and make such review a matter of right in certain cases, do "not divest the court of the discretionary power of correcting its records in a proper case, so as to prevent manifest injustice": Sloan's Estate, 254 Pa. 346, 350.

At the hearing on the petition for review, James testified that he was not in very good health but suffered from sinus and lung trouble and to correct the latter he had undergone three operations. He stated he did not understand the communications sent to him by counsel and that he forgot the date for the audit. He had been mostly employed in the sheet metal business, was unable to do outside work because of his health, and he was fearful of losing his job despite the hopeful request of his father that Robert "will offer employment to my son James if he is able and willing". Being 42 years of age with a wife to support, James was fearful that if he antagonized his brother Robert he might be deprived of all livelihood, and consequently when given counsel's interpretation of the will he "just took it; he never

had anybody take care of my affairs; I left it up to my brother to do it."

From the pleadings and the testimony taken at the hearing it is obvious that James is now asking his day in court. It is true that he neglected two previous opportunities when he was without the advice of independent counsel. That he lacks normal health and the ability to take care of himself, standing always in the shadow of his capable brother, was recognized by the decedent when he wrote his will and was evidently apparent to the learned hearing judge when James was on the witness stand. Counsel for Robert frankly concede petitioner's disabilties in their brief.

The right to independent counsel is just as much a part of due process in civil litigation as in a criminal trial. Counsel for Robert in their letter of October 23, 1961, introduced themselves as "attorneys for your brother, Robert W. Donovan." They went on to explain that they were representing him as "Executor", but the tone of the letter is scarcely sufficient to reassure James that they were completely neutral, or that Robert, his employer, would approve of his sickly brother seeking impartial legal advice. To insure due process, a court will on occasion insist on independent counsel for the adverse parties and grant a new trial even against the wishes of that client who has suffered an adverse verdict while counsel was serving in a dual capacity. Thus in Jedwabny v. Phila. Transportation Company, 390 Pa. 231, cert. den. 355 U. S. 966, 78 S. Ct. 557, 2 L. Ed. 2d 541, it was held no abuse of his discretion for the trial judge to grant a new trial because the additional defendant might . . . " 'not even know his rights relative to a request for a new trial' " . . . and " 'he should be given the chance to make an informed choice' ": (page 234). Our Supreme Court deemed the grant of a new trial "affirmatively proper": (page 236). We make this observation with no sug-

gestion or intimation that in this case counsel's advice was consciously partisan in even the slightest degree.

Reamer's Estate, 331 Pa. 117, 119, 120, is authority for the proposition that even after three years a petition for review will be granted where petitioner has failed to contest an auditor's report recommending an adverse distribution. Our Supreme Court saw fit to excuse petitioner who had originally appeared to object to the accounting but failed to continue in the proceedings when discouraged by dismissal of his objections. Had the petitioner in Reamer's Estate continued to *contest*, an adverse judgment would have been final. See Troutman's Estate, 270 Pa. 310, 320.

The objection most vigorously urged by Robert's counsel is that the decree of the learned hearing judge flies in the teeth of the statutory proviso . . . "That this section shall not authorize review as to any property distributed by the personal representative in accordance with a decree of court before the filing of the petition. . .". It is stated that Robert has continued to operate the business since the death of his father and in the conduct of the same has treated the bank accounts and accounts receivable as his own.

Referring to the inventory and the stated account, we can identify these controversial assets only as they may be included in the general item "Interest in Wm. J. Donovan Co. (personalty) $160,714.21", which is noted as having been distributed to Robert under date of October 31, 1962. A similar distribution by the personal representative to himself as an individual heir was held not to preclude a review after two years in Ehrhart's Estate, 31 Pa. Superior Ct. 120. That case was decided under the Act of 1840, which expressly prohibited its extension . . . "to any cause when the balance found due shall have been actually paid and discharged by any . . . administrator." The court said, page 125: "Plainly enough this proviso was intended

for the protection of an honest accountant who, in pursuance of a court's decree, had actually and in good faith paid out money in his hands to another person; who had thus lost the possession and control of the fund and who could not therefore be reinstated in the position he occupied when the original decree was made. No such case is before us. The person who had the fund when the original decree was made is the same person who had it when the final judgment was entered. That he was called the 'administrator' at one time and the 'distributee' at another is of no importance. As the court below well says, 'we cannot close our eyes to the fact that the hand to pay was the hand to receive and that the accountant, constructively at least, still has this money in his pocket.' The refinement by which the appellant would be regarded as two persons, payer and payee, accountant and distributee, and thus be enabled to call to his aid the protection which the act only intended to extend under very different conditions, is too subtle to be adopted by a court dealing with substantial equities. Where, therefore, it appears from the record that the fund, when the petition is filed, is in the hands of the same person who held it when the decree complained of was entered, that person being the accountant, no formal averment that it has not actually been paid out is necessary to give the court jurisdiction. . . ."

Furthermore, the present executor not having filed the schedule of distribution as directed by the adjudication, the decree of distribution referred to in section 721 is not yet of record. Our court in Taheny's Estate, 46 D. & C. 306, 310, in a most comprehensive opinion by our colleague, Judge Bolger, held that a schedule of distribution ". . . fills in voids necessarily appearing in the adjudication" and is "ordered only when the adjudication is inadequate to dispose of all phases of the case." In the absence of a certification

from this court, an adjudication directing a schedule is not a final decree from which an appeal will lie to an appellate court. See Earle Estate, 369 Pa. 52, footnote pp. 54, 55; Smith Estate, 5 D. & C. 2d 429, 6 Fiduc. Rep. 261. Certainly we cannot recognize the present situation — little more than a risk distribution — as erecting a bar to the relief contemplated by section 721. See generally, Earle Estate, supra, p. 66, and opinion of Bolger, J. (dissenting) in this court, 75 D. & C. 433, at page 465, et seq.

We are convinced that the action of the learned hearing judge in opening the adjudication was affirmatively proper, and all exceptions should be dismissed. We, therefore, enter the following

### Decree

And now, December 6, 1963, the exceptions of Robert W. Donovan to the decree entered by Judge Burke on July 3, 1963, are dismissed, and the record, including the account, is returned herewith to the learned auditing judge for reaudit.